IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LIBERTY LEGAL FOUNDATION, JOHN DUMMETT, LEONARD VOLODARSKY, CREG MARONEY, | ) ) ) ) ) Case No. 2:12-cv-02143-cgc |
| Plaintiffs, vs. NATIONAL DEMOCRATIC PARTY OF THE USA, INC., DEMOCRATIC NATIONAL COMMITTEE, TENNESSEE DEMOCRATIC PARTY, DEBBIE WASSERMAN SCHULTZ, and CHIP FORRESTER, | ) ) ) ) ) ) ) ) ) ) ) ) ) Removal of Case No. CH-11-1757-3 From Chancery Court for the State of Tennessee in Shelby County |
| Defendants. | ) ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)

Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants the Democratic National Committee (the "DNC"), the Tennessee Democratic Party (the "TNDP"), Debbie Wasserman Schultz ("Wasserman Schultz"), and   Chip Forrester ("Forrester" and collectively with the previously named defendants the "Defendants")[1], respectfully move this Court to dismiss this case in its entirety or in part.

## INTRODUCTION

The sole aim of this case is to keep President Barack Obama off the ballot for the November 2012 general election (the "Election") by preventing the Democratic Party from submitting President Obama's name as the Democratic Party's candidate to the Tennessee

---

[1]Plaintiffs also name the National Democratic Party of the USA, Inc. as a defendant, but this organization is apparently a sham organization, most likely affiliated with the Shelby County Republican Party, and therefore, as explained in greater detail herein, is not a proper party to this lawsuit.  Accordingly, they will not be treated as a proper defendant.

Secretary of State Division of Elections ("TN Secretary of State").  To obtain this end, Plaintiffs Liberty Legal Foundation ("LLF"), John Dummett, Leonard Volardarsky, and Creg Maroney (collectively the "Plaintiffs") assert the absurd and well-debunked allegations that President Obama is not a natural born citizen of the United States and therefore does not meet the constitutional requirements to hold the Office of the President of the United States.  Several courts at both the federal and state level have unfortunately had to address these ridiculous allegations.  As should be abundantly obvious by the fact that President Obama has held the office of the President of the United States for over three years now, all of the previously filed suits proved baseless, and this one exhibits the same complete lack of merit.

Even if the Plaintiffs' claims did not suffer from a clear and fatal defect of lack of standing, Plaintiffs' claims are substantively deficient and fail to state a claim.  The Electoral College is the body responsible for certifying presidential candidates and is responsible in the first instance to determine whether a candidate is qualified to hold the office of President of the United States.  This lawsuit seeks to short-circuit that process in clear violation of federal law. Furthermore, the Democratic Party, and specifically the TNDP as the party responsible for submitting its nominee for President for the Election, has an absolute First Amendment right to nominate anyone it wants for President of the United States.  Finally, because the Amended Complaint brings causes of action for negligent and intentional misrepresentation, and Plaintiffs fail to properly allege the element of detrimental reliance, the Plaintiffs have failed to state a claim upon which relief can be granted, and accordingly this case should be dismissed for this reason as well.

Finally, all Defendants but the TNDP should be dismissed because the TNDP is solely responsible for submitting the name of the Democratic Party nominee to the TN Secretary of State.

247211                                                 2

## BACKGROUND

On October 26, 2011, the Plaintiffs filed a class action complaint for declaratory and injunctive relief in Shelby County Chancery Court, Case No. CH-11-1757-3, and initially named as parties the National Democratic Party of the USA, Inc. ("NDP USA"), Wasserman Schultz (Chairperson of the DNC), and Chip Forrester (Chairperson of the TNDP).  (*See* Original Complaint.)  At this time, Plaintiffs only served the NDP USA and did not serve either Chairpersons Wasserman Schultz or Forrester.

On January 20, 2012, prior to any party filing an answer, Plaintiffs filed a First Amended Complaint, which is the operative complaint in this case, and added the DNC and TNDP as parties.  On January 26, 2012, Plaintiffs finally served Forrester but the summons he received clearly applied only to him, and to date, the TNDP has not been served.  On February 9, 2012, the DNC finally received service, and to date Wasserman Schultz has not been served.

The Amended Complaint's sole purpose is to prevent President Obama's name from appearing on the ballot in the State of Tennessee.  (Amended Complaint ¶¶ 1, 4.)  The Amended Complaint alleges that President Obama[2] is not a natural born citizen and is therefore not constitutionally qualified to hold the office of President of the United States of America and therefore his name should not appear on the ballot in Tennessee.  (Amended Complaint ¶ 1.)  To achieve the unprecedented relief sought, the Amended Complaint does not seek to enjoin the actions of state or federal election officials, but rather seeks to enjoin the Defendants from filing relevant documents with the TN Secretary of State identifying President Obama as the democratic candidate for the Office of the Presidency in the upcoming Election.  (Amended Complaint ¶¶ 4, 7-8.)

---

[2] Showing their true colors, Plaintiffs continuously refer to President Obama as "Mr. Obama" throughout their Amended Complaint, an obvious attempt to demean the President and the office.  Defendants will obviously throughout this case refer to President Obama as "President Obama," giving proper respect to the man himself and the office he occupies.

The Amended Complaint then goes on to detail the alleged evidence supporting the claim that President Obama is not a "natural born citizen" qualified to hold the office of the President of the United States.  (Amended Complaint ¶¶ 9-12.)  The Amended Complaint also alleges that President Obama became a dual citizen of both the United States and Indonesia and eventually relinquished his United States citizenship and became solely a citizen of Indonesia.  (Amended Complaint ¶¶ 13-19).

The Amended Complaint also alleges that President Obama's social security number ("SSN") is fraudulent and that the federal E-verify system flags President Obama's SSN as fraudulent.  (Amended Complaint ¶¶ 19-23.)[3]

Plaintiffs assert two causes of action:

1.  Negligent Misrepresentation: Alleging that Defendants will fail to exercise reasonable care, diligence, or expertise in submitting President Obama's name as the Democratic Party nominee for the position of President of the United States to the TN Secretary of State's Division of Elections.  (Amended Complaint ¶¶ 60-70.)

2.  Fraud/Intentional Misrepresentation: Alleging that because Defendants have knowledge of President Obama's lack of qualifications to hold the office of President by virtue of being served with this lawsuit, that the Defendants will engage in intentional misrepresentation by submitting President Obama's name as the Democratic Party nominee for the position of President of the United States to the TN Secretary of State.  (Amended Complaint ¶¶ 71-73.)

Plaintiffs seek a declaration that any representation by the Defendants that Mr. Obama is qualified to hold the office of the President of the United States would constitute negligence or fraud and Plaintiffs seek an injunction preventing the Defendants from issuing any letters, certificates, or other documents to the TN Secretary of State indicating that President Obama is the Democratic Party's nominee for the Election.  (Amended Complaint at Prayer for Relief ¶¶ 1-2.)

---

[3] The foregoing allegations are the only arguments lodged in support of Plaintiffs' claims that President Obama is not a natural born citizen.  *See generally* Amended Complaint.

In short, Plaintiffs seek to ensure that President Obama's name does not appear on the ballot in the state of Tennessee by preventing the Defendants from submitting his name as their candidate for the office of President of the United States in the Election.

## STANDARD OF REVIEW

Defendants move this Court to dismiss this case under both Rule 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim).

In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court is to determine "whether the complaint alleges facts on its face which, if taken as true, would be sufficient to invoke the district court's jurisdiction." *FOCUS v. Allegheny County Ct. of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *Id.*

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Villegas v. Metro. Gov't of Davidson County*, 2009 WL 4015975, at *2 (M.D. Tenn. Nov. 19, 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires more than labels and conclusions, and a formulaic recitation on the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The *Twombly* standard applies to all civil cases, and a plaintiff must allege enough facts to allow the fact finder to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added). Thus, a complaint must proffer sufficient factual support to bring the plaintiff's claim "above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

The Amended Complaint is so lacking in factual or legal support that it is difficult to identify all reasons for which a motion to dismiss should be granted. Procedurally, Plaintiffs lack standing to bring this case and therefore it should be dismissed under Rule 12(b)(1).

Substantively, and apart from the fact that the Amended Complaint hinges on the absurd and well-debunked notion that President Obama is not a natural born citizen, the Amended Complaint is defective because: 1) federal law preempts any attempt by this Court to rule on the qualifications of a candidate for President of the United States, but rather this determination rests with the electorate and the United States Congress; 2) the Democratic Party has the absolute right to nominate anyone it wants as its candidate for the office of President of the United States; and 3) the Plaintiffs cannot show that they will rely upon the alleged misrepresentations by Defendants that would give rise to a claim for either negligent or intentional misrepresentation. These defects compel dismissal under Rule 12(b)(6).

Finally, and in the alternative, even if the Amended Complaint stated a viable complaint against at least one defendant, and it clearly does not, the TNDP - by statute - is solely responsible to submit a name to the TN Secretary of State identifying its nominee for President of the United States, and accordingly, all other Defendants should be dismissed under Rule 12(b)(6) as they cannot – by law – take the action that the Plaintiffs seek to enjoin.

**I.      The Plaintiffs Lack Standing And The Case Must Be Dismissed For Failure Of Subject Matter Jurisdiction Under Rule 12(b)(1)**

Plaintiffs fail to allege an injury-in-fact, and this leaves the Court without subject matter jurisdiction to adjudicate this dispute.

A core element of Article III's case-or-controversy requirement is that a plaintiff must have standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130,

119 L. Ed. 2d 351 (1992).  Standing is an "irreducible constitutional minimum" that has three elements.  *Id*. at 560.  First, a party must have experienced an injury-in-fact: "an invasion of a legally protected interest which is:  (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id*. (citations and quotation marks omitted).  Second, there must be a causal connection between the injury-in-fact and the defendant's conduct that is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Id*. at 560-61.  Third, a favorable decision must be likely to redress the complained of injury.  *Id*., 504 U.S. at 561 (citations omitted).  Where a plaintiff cannot establish each of the three elements, the plaintiff does not have standing and the court therefore does not have jurisdiction over the case and cannot rule on the merits.  *See Goode v. City of Phila.*, 539 F.3d 311, 327 (3d Cir. 2008) ("[O]nce the District Court determined that [plaintiffs] did not have standing, it necessarily determined that it did not have jurisdiction and thus it could not decide the merits of the case.").

A wealth of precedent related to similar cases filed throughout the country strongly supports the contention that Plaintiffs lack standing.  No less than six federal cases and at least one state case have been dismissed at the federal level where Plaintiffs sought to challenge President Obama's qualifications to hold the office of President of the United States by virtue of his alleged, and now fully debunked, failure to meet Article II, Section I's "natural born citizen" requirement.  *Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011) (Constitutional claims by military personnel, taxpayers, political representatives, a family relative, and candidates against the President based on his alleged ineligibility to hold office were properly dismissed for lack of Article III standing); *Kerchner v. Obama*, 612 F.3d 204 (3d Cir. 2010) (Even if placing an ineligible candidate on the ballot harmed voters, the injury was too general for U.S. Const. art. III standing as all voters had an interest in proper application of the U.S. Constitution and laws;

dismissing a declaratory judgment action alleging President Obama was ineligible under U.S. Const. art. II, § 1, cl. 5, was affirmed); *Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) (An order dismissing an action seeking a declaratory judgment that defendant then-Presidential candidate was ineligible under U.S. Const. art. II, § 1, cl. 5, and an injunction barring him from running for President was affirmed because the plaintiff lacked standing because he had suffered no injury particularized to him); *Taitz v. Obama*, 707 F. Supp. 2d 1, (D.D.C. 2010) (Plaintiff lacked standing because she did not allege sufficient injury-in-fact to challenge whether President Obama is a natural born citizen as required by the Constitution);  *Barnett v. Obama*, Case No. 09-0082, 2009 U.S. Dist. LEXIS 101206 (C.D. Cal. 2009) (Claims alleging that the United States President did not meet the qualifications specified by U.S. Const. art. II, § 1, cl. 5, were dismissed for lack of standing where although the third party presidential candidates had a potential injury-in-fact, the court could redress the claims as removal of a sitting president was committed to Congress); *Cohen v. Obama*, 2008 U.S. Dist. LEXIS 10011 (dismissing claims alleging President Obama is an illegal alien because "[p]laintiff's stake is no greater and his status no more differentiated than that of millions of other voters[,] . . . his harm is too vague and its effects too attenuated to confer standing on any and all voters."); *see also Wrotnowski v. Bysiewicz,* 289 Conn. 522 (2008) (dismissing for lack of standing claims asserting that President Obama was not a natural born citizen).[4]

Plaintiffs fail to cure any of the defects identified by these decisions.  Plaintiff Maroney is simply an American citizen and his only alleged injury derives from his status as a voter.  He is, therefore, in no different position than other plaintiffs who have brought similar cases.  *See e.g.*,

---

[4] Numerous other cases filed throughout the country also challenged President Obama's qualifications, but these cases were dismissed on other grounds other than standing.  *See e.g.*, *Purpura v. Sebelius*, 2011 U.S. App. LEXIS 19943 (3d Cir. 2011); *Barnett v. Dunn*, 2011 U.S. Dist. LEXIS 31219 (E.D. Cal. 2011); *Strunk v. United States Dep't of State*,  693 F. Supp. 2d 11 (D.D.C. 2011); *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010);  *Rhodes v. MacDonald*, 670 F. Supp. 2d 1363 (M.D. Ga. 2009); *Justice v. Fuddy*, 253 P.3d 655 (Haw. Ct. App. 2011).

*Berg*, 586 F.3d at 240 ("Even if we assume that the placement of an ineligible candidate on the presidential ballot harmed Berg, that injury, including any frustration Berg felt because others refused to act on his view of the law, was too general for the purposes of Article III:  Berg shared both his interest in proper application of the Constitution and laws, *pari passu* with all voters"); *Cohen*, 2008 U.S. Dist. LEXIS 100011, at *1 (dismissing citizen challenge to Obama's eligibility).

Plaintiffs Volodarsky and Dummett are slightly different in that they are allegedly "presidential candidates," but their presidential prospects are "theoretical at best" and any harm accruing to them by virtue of their candidacy is "speculative."  *Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008) (denying preliminary injunction for petitioner because he lacked standing to sue to determine whether John McCain was a "natural born citizen" and therefore qualified to hold the office of President of the United States); *see also Drake*, 664 F.3d at 782-783 (finding that third party political candidates lacked standing to challenge whether President Obama satisfied "natural born citizen" requirement).  Moreover, given that it is unclear at this point which candidate will receive Tennessee's allotment of Electoral College votes, it remains speculative as to whether these Plaintiffs have actually sustained any harm.  After all, if the republican candidate wins the state, then Plaintiffs would not have been harmed by having President Obama's name on the ballot as the allotment of Tennessee's Electoral College votes would go to another candidate.  This type of unrealized, speculative harm is insufficient to meet Article III's standing requirements.  *See ACLU v. NSA,* 493 F.3d 644, 657 (6th Cir. 2007) (dismissing claims for lack of standing where alleged harm was "too speculative" to satisfy injury requirement of Art. III standing).

Plaintiff, LLF, an association whose primary goal "is the defense of basic human rights," also lacks standing.  Associational standing is a three-part test: (1) the association's members

would independently meet the Article III standing requirements; (2) the interests the association seek to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members.  *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).  LLF cannot satisfy these requirements for two reasons.  First, as already discussed, its associate members lack standing, and therefore an association made up of members that lack standing cannot itself have standing either.  *Id*. at 343; *see AFGE v. Clinton*, 180 F.3d 727 (6th Cir. 1999) (holding that an association cannot have standing to sue because the individual members of the association lacked standing).  Second, the LLF seeks to protect the rights of voters to have a constitutionally qualified candidate on the state ballot, but the Amended Complaint alleges that the primary goal of the LLF is "the defense of basic human rights."  Accordingly, the interests the association seeks to protect are not germane to the purpose of the organization and therefore LLF cannot satisfy the second prong of the associational standing three-part test.  *See Hunt* 432 U.S. 333 (finding that association lacked standing to seek injunction on behalf of its members on the grounds that the interests the association were seeking to protect in filing suit had not been shown to be germane to the purposes of the association); *Associated General Contractors v. Otter Tail Power Co.,* 611 F.2d 684 (8th Cir. 1979) (holding that an association lacked standing because it failed to show that the interests to be protected by the lawsuit were germane to the association's stated purpose).

Accordingly, because Plaintiffs fail to satisfy the "irreducible constitutional minimum" requirement of standing, this case must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  *Drake*, 664 F.3d 774; *Kerchner*, 612 F.3d 204.

**II.     Plaintiffs Fail To State A Claim And The Case Must Be Dismissed Pursuant To Rule 12(b)(6)**

Even if this Court has subject matter jurisdiction to adjudicate this dispute, the Plaintiffs' claims must still be dismissed under Rule 12(b)(6) for failure to state a claim.  Plaintiffs' claims fail for at least three reasons: 1) A lawsuit in federal or state court is not the proper method to challenge the qualifications of a candidate to hold the office of President of the United States because this challenge is left exclusively with the electorate and the United States Congress; 2) the TNDP has an absolute right, derived from its First Amendment Rights, to nominate whoever it wants as its candidate for the Election; and 3) even accepting as true the preposterous allegations contained in the Amended Complaint, Plaintiffs cannot and do not allege that they have relied upon the alleged misrepresentations to be made by the Defendants.

   A.   *Federal Law Preempts Plaintiffs' Claims Because The Determination Of Whether A Candidate Is Constitutionally Qualified To Hold The Office Of President Of The United States Rests, In The First Instance, With The Electorate And The United States Congress*

The Constitution of the United States and relevant federal law implementing its mandates preempts this Court's authority to rule on the merit of Plaintiffs' claims.  Plaintiffs' claims cannot succeed unless and until this Court determines that President Obama is unqualified to hold the office of President of the United States.[5]  (Amended Complaint ¶¶ 1-4.)  However, the determination of whether a candidate for President of the United States is constitutionally qualified to hold that office rests, in the first instance with the electorate and the United States Congress.  In other words, federal law preempts Plaintiffs' claims concerning the qualifications

---

[5] Only one court has reached the merits of whether President Obama is a "natural born citizen" and that court, looking to precedent of the United States Supreme Court, held unequivocally that President Obama by virtue of being born in the United States to a mother who was a United States citizen was in fact a "natural born citizen."  *See Ankeny v. Governor,* 916 N.E.2d 678, 684-89 (Ind. Ct. App. 2008).  The Court also noted that President Obama is not the first President of the United States to be born to a father who was not a United States citizen.  Chester A. Arthur's father was Irish.  *Id*. at 689, n.16.  Obviously, the holding of this Court applied here would also compel dismissal under Rule 12(b)(6) as Plaintiffs do not challenge whether President Obama's mother was a United States citizen or that he was born in the United States.  *See* Amended Complaint ¶¶ 1-4.

of President Obama to hold the office of President of the United States. *See Robinson*, 567 F. Supp. 2d at 1147.

There are various tests for determining whether federal law has preempted state legislation:

> The Supremacy Clause of U.S. Const. art. VI provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the states to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Norfolk & W. R. Co. v. Public Utilities Com.*, 926 F.2d 567, 569 (6th Cir., 1991) quoting *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355 (1986).

Here, federal law preempts the application of state tort law because state tort law "stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *Norfolk*, 926 F.2d at 569. Congress, implementing constitutional mandates, intended that the determination of whether a candidate is constitutionally qualified to hold the office of President of the United States be left to the electorate and then to the United States Congress in the process of certifying the Electoral College vote.

In a case remarkably similar to the one at bar, the Northern District of California, in examining whether Senator McCain should appear on the ballot in California, looked to the United States Constitution as well as federal law implementing the Constitution's mandates and held as follows:

> Article II prescribes that each state shall appoint, in the manner directed by the state's legislature, the number of presidential electors to which it is constitutionally entitled. The Twelfth

Amendment prescribes the manner in which the electors appointed by the states shall in turn elect the president:

"[t]he electors shall meet in their respective states and vote by ballot for President and Vice-President . . . and they shall . . . transmit [their votes] sealed to the seat of the government of the United States, directed to the President of the Senate; -- The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."

Federal legislation further details the process for counting electoral votes in Congress. 3 U.S.C. 15. Section 15 directs that Congress shall be in session on the appropriate day to count the electoral votes, with the President of the Senate presiding. It directs that designated individuals shall open, count and record the electoral votes, and then present the results to the President of the Senate, who shall then "announce the state of the vote."  Ibid.  The statute provides a mechanism for objections then to be registered and resolved:

"[e]very objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received. When all objections so made . . . shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision."

*Ibid*.  The Twentieth Amendment further provides:

"if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be elected, and such person shall act accordingly until a President or Vice President shall have qualified."

It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding

> qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance.

*Id.*   That court concluded, pursuant to the Constitutional and federal law mandates above, that "*[j]udicial review -- if any -- should occur only after the electoral and Congressional processes have run their course.*"   *Id.* (emphasis added).

Plaintiffs' claims here fail for the exact same reasons as the plaintiffs' claims failed in *Robinson*.   The Amended Complaint simply means to short-circuit the electoral process and usurp the United States Congress' role in certifying a presidential election by attempting to use this Court's power to keep President Obama off the ballot in Tennessee.   Any state law requiring that a determination as to a candidate's qualification to hold the office of the President of the United States outside this process is clearly prohibited by the federal law requiring that the electorate and the United States Congress first determine that issue.   Accordingly the Amended Complaint must be dismissed for failure to state a claim under Rule 12(b)(6).   *Id.*; *see also Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559 (6th Cir. 1998) (granting defendant's Rule 12(b)(6) motion where state law stood as an obstacle to the implementation of federal law and therefore state law was preempted by federal regulations).

### B. The Tennessee Democratic Party Has A Right To Nominate Whoever It Wants As Its Candidate For President Of The United States

Although the Amended Complaint is based on the absurd and unsupported allegations regarding the qualifications of President Obama to hold the office of President of the United States, an office he has now held for over three years, assuming, arguendo, that Plaintiffs'

allegations are true, and they have clearly been proven meritless and farcical, the Defendants have a First Amendment right to choose for itself its nominee.

It is well settled that "members of a recognized political party unquestionably have a constitutional right to select their nominees for public office." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 576 (2000) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 371 (1997) (J. Stephens dissenting).  This right extends to the situation where a party attempts to nominate a candidate that is "ineligible for the office" or "unwilling to serve." *Timmons*, 520 U.S. at 359.  In *Jones* the Supreme Court held that "[the Supreme Court's] cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party selects a standard bearer who best represents the party's ideologies and preferences." *Id*. at 575 (internal citations omitted).  Importantly, these protections have been extended specifically to the TNDP in a recent case filed in the Middle District of Tennessee. *See Kurita v. State Primary Bd. of the Tenn. Democratic Party.*, Case No. 08-0948, 2008 U.S. Dist. LEXIS 83278 (holding that the Tennessee Democratic Party has a "First Amendment right to choose its own candidate for the general election").

In short, the Defendants, and particularly the TNDP who is solely and exclusively responsible for identifying its nominee for the Election, have a constitutional right to choose for itself its own nominee.  Instead, if Plaintiffs wished to challenge the TNDP's potential nominee, it must work within the process set forth by the TNDP for determining its nominee for the Election and should not petition the courts to get involved with the TNDP's selection of its nominee. *See Kurita v. State Primary Bd. of the Tenn. Democratic Party*, Case No. 3:08-0948, 2008 U.S. Dist. LEXIS 88071 (M.D. Tenn. 2008) (noting that federal courts should "avoid interference with the First Amendment associational rights of a political party when that party is engaged in the process of selecting its nominee for public office").

Plaintiffs clearly intend to work outside the process the TNDP has established for selecting its nominee, and by doing so Plaintiffs seek to trample the TNDP's First Amendment rights by short-circuiting the Defendants' nomination process and use this Court's power to compel it to either nominate a different candidate than President Obama or submit no candidate at all.  Such an effort is an affront to the First Amendment rights of the Defendants as articulated by the United States Supreme Court in *Jones* and the wealth of precedent cited by the United States Supreme Court in that decision.  The Court cannot acquiesce to such a demand, and the Amended Complaint must be dismissed.  *See Jones*, 530 U.S. at 566-68 (holding that the California Democratic Party had a constitutional right to select its own nominee for president); *Timmons*, 520 U.S. at 359; *Kurita*, 2008 U.S. Dist. LEXIS 83278 (holding that the Tennessee Democratic Party has a "First Amendment right to choose its own candidate for the general election").

C.  *Plaintiffs Fail To Plead That They Have Relied Upon The Alleged Misrepresentations To Be Made By Defendants*

Plaintiffs cannot show how they would detrimentally rely upon the alleged misrepresentations they allege will be made by the Defendants, and accordingly, Plaintiffs fail to state a claim for relief either for intentional or negligent misrepresentation.

Under Tennessee law, to state a claim for intentional misrepresentation, a Plaintiff must show that:

> [A] party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation n must have been made with knowledge of its falsity and with a fraudulent intent.  The representation must have been to an existing fact which is material and plaintiff must have reasonably relied upon that representation to his injury.

*First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991). To state a claim for negligent misrepresentation, a plaintiff must show that:

> [T]he defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information.

*Cato v. Batts*, 2011 Tenn. App. LEXIS 73 *17 (Tenn. Ct. App.) citing *Merriman v. Smith*, 599 S.W.2d 548, 556-57 (Tenn. Ct. App. 1979).

Therefore, under Tennessee state law, to state a claim for either negligent or intentional misrepresentation, a plaintiff must prove that it relied upon material misrepresentations made by the defendant.  First Nat'l Bank, 821 S.W.2d at 927; Merriman, 599 S.W.2d at 556-57.

Here, Plaintiffs fail to allege that they relied, or will rely, upon the misrepresentations of the Defendants.  With regard to reliance, Plaintiffs only claim the following:

> Upon receipt of [documents to be submitted by the TNDP], ***and in reliance upon the false representations made by the Democratic Party and its agents***, the Tennessee Secretary of State will be required to have Mr. Obama's name placed on ballots in all counties in Tennessee for the office of President of the United States.

(Amended Complaint ¶¶ 66.)  In other words, Plaintiffs do not allege that they will rely upon the alleged misrepresentations to be made by the Defendants, but rather they only allege that the TN Secretary of State will rely upon these misrepresentations.  Given that detrimental reliance is an element to a claim for misrepresentation under Tennessee law, and given that Plaintiffs fail to claim any such reliance, Plaintiffs fail to state a claim for either negligent or intentional misrepresentation.  Accordingly, their claims must be dismissed.  *See Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005) (upholding dismissal of fraud claims where complaint failed to allege "particularized allegations…as to the reasonableness of the [plaintiff's] reliance upon [defendant's statements]"); *see also McNeil v. Nofal,* 185 S.W.3d 402, 408-09 (Tenn. Ct. App. 2005)  ("In order to succeed in any action based upon fraudulent or negligent misrepresentation, the plaintiff must prove that it relied justifiably on the defendant's statements. The burden is not

upon the defendant to show that it was not negligent, but rather, the burden is upon the plaintiff

to show that its reliance upon any statements defendants may have made was reasonable.")

### III. Alternatively, All Other Defendants But The TNDP Should Be Dismissed Because They Are Not Responsible For Submitting The Democratic Party's Nominee To The TN Secretary Of State

Even if this Court has subject matter jurisdiction, and even if the Amended Complaint

stated a claim, it clearly does not state a claim against all the Defendants.  Under Tenn. Code

Ann. § 2-5-201, the TNDP is solely responsible for submitting the name of the Democratic Party

nominee to the TN Secretary of State.  Specifically, Tenn. Code Ann. § 2-5-201 requires that a

person's name be shown on a ballot as the nominee of a political party only if it is submitted by a

"statewide political party."  In other words, the TNDP, as the state party of the Democratic Party,

is solely and exclusively responsible for identifying the democratic candidate for any statewide

race.  *See* Tenn. Code Ann. § 2-5-201.

This is especially so for the NDP USA.  Based on a review of publicly available

documents filed with the TN Secretary of State, the NDP USA is apparently a mere sham

organization created in 2010, possibly organized by the Shelby County Republican Party, in

order to use, without authorization and in bad faith, the name "National Democratic Party" for

nefarious purposes like this lawsuit.  Other active names for the NDP USA include the "Shelby

County Republican Party, Inc."  The NDP USA's principal place of business is in Memphis and

as is obvious from the Amended Complaint, the TNDP is based in Nashville.  Taken together, it

is clear that the NDP USA is not a proper party to this lawsuit, and apparently this organization

was named as a party defendant for the sole purpose of obtaining venue in Shelby County.  All

Defendants but the TNDP should be dismissed immediately.[6]

---

[6] Plaintiffs apparently are aware that the NDP USA is a sham organization as this is not the first time Plaintiffs have sued this organization. *See Liberty Legal Foundation, et. al. v. National Democratic Party of the USA, Inc., et. al.*, No. 11-2089 (D. Ariz. 2011).

## CONCLUSION

In light of the foregoing, Defendants move this Court to dismiss this action in its entirety, or in the alternative dismiss all Defendants but the TNDP.

Submitted this 1st day of March, 2012.

By:     /s/ J. Gerard Stranch, IV
        J. Gerard Stranch, IV (BPR#023045)
        Benjamin A. Gastel (BPR#028699)
        BRANSTETTER, STRANCH
         & JENNINGS, PLLC
        227 Second Avenue North, 4th Floor
        Nashville, TN 37201-1631
        Telephone: 615/254-8801
        Facsimile:  615/255-5419
        gerards@branstetterlaw.com
        beng@branstetterlaw.com

        *Counsel for the Democratic National Committee, the Tennessee Democratic Party, and Debbie Wasserman Schultz*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via US Mail, postage prepaid, on March 1, 2012, upon:

Van Irion
Liberty Legal Foundation
9040 Executive Park Dr., Ste. 200
Knoxville, TN 37923

                        /s/   J. Gerard Stranch, IV
                        J. Gerard Stranch, IV