IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LIBERTY LEGAL FOUNDATION, JOHN DUMMETT, LEONARD VOLODARSKY, CREG MARONEY, <br><br>    Plaintiffs, <br>vs. <br><br>NATIONAL DEMOCRATIC PARTY OF THE USA, INC., DEMOCRATIC NATIONAL COMMITTEE, TENNESSEE DEMOCRATIC PARTY, DEBBIE WASSERMAN SCHULTZ, and CHIP FORRESTER, <br><br>    Defendants. | Case No. 2:12-cv-02143-cgc <br><br> Removal of Case No. CH-11-1757-3 From Chancery Court for the State of Tennessee in Shelby County |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendants the Democratic National Committee, Tennessee Democratic Party ("TNDP"), Debbie Wasserman Schultz, and Chip Forrester (collectively the "Defendants") file this Memorandum in Opposition to Plaintiffs' Motion to Remand. On March 14, 2012, Plaintiffs Liberty Legal Foundation, John Dummett, Leonard Volodarsky and Creg Maroney (collectively the "Plaintiffs") filed a Motion to Remand (Dkt No. 12, the "Motion") and a related Memorandum of Law in support thereof (Dkt. No. 13, the "Memo.") seeking to force this fundamentally federal matter into state court. For the reasons stated below, Plaintiffs' Motion must be denied.

### INTRODUCTION

The Motion is based on the absurd position that whether a person satisfies Article II's requirements to hold the office of President of the United States does *not* raise a federal question

triggering this Court's subject matter jurisdiction. By its very nature, whether a given person satisfies Article II's requirements is a question "arising under" Article II of the United States Constitution, and the Motion must be denied. Plaintiffs invite this Court to allow state courts to determine Article II's requirements, which would lead to the absurd result that a President of the United States could be President in Tennessee but not in Kentucky. This absurdity can easily be avoided by resolving the question of whether a person satisfies Article II's requirements at the federal level. Accordingly, the Court should deny the Remand Motion.

## BACKGROUND

The Amended Complaint's sole purpose is to prevent President Obama's name from appearing on the Tennessee ballot. (Amended Complaint ¶¶ 1, 4.) The Amended Complaint alleges that President Obama is not a natural-born citizen or is otherwise not qualified to hold the Office of President of the United States and therefore his name should not appear on the Tennessee ballot. (Amended Complaint ¶ 1.) Plaintiffs seek to enjoin the Defendants from filing relevant documents with the Tennessee Secretary of State identifying President Obama as the Democratic candidate in the upcoming November 2012 Presidential Election. (Amended Complaint ¶¶ 4, 7-8.)

Plaintiffs assert two causes of action:

1. <u>Negligent Misrepresentation</u>: Alleging that the Defendants will fail to exercise reasonable care, diligence, or expertise in submitting President Obama's name as the Democratic Party nominee for the position of President of the United States to the Tennessee Secretary of State. (Amended Complaint ¶¶ 60-70.); and

2. <u>Fraud/Intentional Misrepresentation</u>: Alleging that because Defendants have knowledge of President Obama's lack of qualifications to hold the office of President by virtue of being served with this lawsuit, that the Defendants will engage in intentional misrepresentation by submitting President Obama's name as the Democratic Party nominee for the position of President of the United States. (Amended Complaint ¶¶ 71-73.)

Plaintiffs seek a declaration that any representation by the Defendants that President Obama is qualified to hold the office of the President of the United States would constitute negligence or fraud, and they seek an injunction preventing the Defendants from issuing any letters, certificates, or other documents to the Tennessee Secretary of State indicating that President Obama is the TNDP's nominee for the 2012 presidential election. (Amended Complaint at Prayer for Relief ¶¶ 1-2.)

## ARGUMENT

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[1] Plaintiffs' Amended Complaint rises or falls entirely on two questions: (1) whether President Barack Obama is constitutionally qualified to hold the office of President of the United States, and (2) who determines this. Since he is so qualified, then Plaintiffs' misrepresentation claims necessarily fail. If a Tennessee state actor is not the proper party to make that determination, then Plaintiffs' misrepresentation claims necessarily fail. Both of these questions raise federal issues vesting this Court with subject matter jurisdiction under 28 U.S.C. § 1331.

Plaintiffs offer a two-fold argument in support of remand. First, Plaintiffs hold out like a talisman the adage that a plaintiff is the "master" of his complaint. Memo. at 1. This maxim holds true "in general," *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (U.S. 2005), though not absolutely. The primary limitation to this rule is that the complaint be "well-pleaded." Such a complaint, if "properly pleaded," is judged "on the face." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (U.S. 1987). "[S]ince the plaintiff is 'the master of the complaint,' the well-pleaded-complaint rule enables him, 'by eschewing claims based on federal law, . . . to have the cause

---

[1] Although this case was removed pursuant to 28 U.S.C. § 1441(c)(1)(A), the standard for determine federal question jurisdiction under that statute has been interpreted the same as 28 U.S.C. § 1331. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757-58 (6th Cir. 2000).

249991                                3

heard in state court.'" *Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (U.S. 2002) (citing *Caterpillar Inc.*, 482 U.S. at 398-399). The rule governs only if plaintiffs' draft their complaint in "exclusive reliance on state law." *Caterpillar* at 392.

Plaintiffs' Amended Complaint is not "well-plead," in either the legal or the common-sense meaning of the term. The well-pleaded-complaint rule implicates Plaintiffs' second argument in favor of remand, which is that their two causes of action for misrepresentation do not require resolution of any federal question. They attempt to complicate this argument by inviting the Court to view these claims in "alternative" ways that supposedly eliminate any federal question, but in fact resolution is quite simple and straightforward.

In Tennessee, a prima facie case of negligent misrepresentation requires the plaintiff to show "by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information." *Cato v. Batts*, 2011 Tenn. App. LEXIS 73, 16-19 (Tenn. Ct. App. Feb. 17, 2011) (internal citations omitted). Putting aside, for now, the myriad arguments as to why Plaintiffs have failed to state a claim for negligent misrepresentation, disposition of this claim in any form will require Plaintiffs to prove that any representations made by the Defendants as to President Obama's qualifications were false. This is the heart of Plaintiffs' argument and appears repeatedly throughout the Amended Complaint. *See* Amended Complaint ¶¶ 1, 2, 4, 5, 8, 9, 10, 11, 12, 13, 14, 62, 65, 68, and 69. In fact, Plaintiffs allude to President Obama's "qualifications" to hold office no less than 26 times in the Amended Complaint. Even assuming, *arguendo*, that Defendants have made any such representations, the question of their veracity necessarily relies on the court's interpretation of the qualifications to hold that office found in the United States Constitution.

Similarly, to make a prima facie case for intentional misrepresentation, a plaintiff must prove: "(1) an intentional misrepresentation of material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the misrepresentation involves a past or existing fact." *Robertson v. George*, 2001 Tenn. App. LEXIS 747, 11-14 (Tenn. Ct. App. Oct. 5, 2001) (internal citations omitted). Again, the veracity of any representations made by Defendants as to President's Obama's qualifications is a necessary element of Plaintiffs' claim.

Plaintiffs disingenuously argue that the "Complaint does not request or require this Court to find that President Obama is not qualified to hold the office of President of the United States," but instead turns on the question of whether "Barack Obama is a 'natural-born citizen.'" Amended Complaint ¶ 2. This argument is ludicrous, precisely because citizenship is a Constitutional qualification to hold the office of the President. It boggles the mind how any court could prevent the name of a popularly selected candidate from appearing on a ballot because he is not legally qualified without determining his qualification to hold the office he seeks.

In fact, this sort of sham pleading is precisely what the well-pleaded complaint rule was created to prevent. While "the party who brings a suit is master to decide what law he will rely upon, it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (U.S. 1983) (internal citations and quotations omitted). This, however, is precisely what Plaintiffs have done. While their Amended Complaint asserts state law causes of action, Plaintiffs relief under those claims necessarily requires a court answer the fundamental *__federal__* question raised by the Amended Complaint: namely whether President Obama satisfies Article II's requirements to hold the office

249991                                                            5

of President of the United States. This is a question rooted in federal Constitutional law, and thus implicates federal "arising under" jurisdiction.

The United States Supreme Court has held:

> 28 U.S.C.S. § 1331's provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law…There is, however, another long-standing, if less frequently encountered, variety of federal "arising under" jurisdiction, judicial precedent having recognized for nearly 100 years that *in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.* The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citing *Hopkins v. Walker*, 244 U.S. 486 (1917)). "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*, 545 U.S. at 314 (internal citations and quotations omitted).

As should be clear from the above, President Obama's qualifications to hold the Office of President of the United States is a disputed and substantial question raised by both of Plaintiffs' misrepresentation claims in the sense that Plaintiffs contend he is not qualified (Amended Complaint ¶¶ 58-71), and Defendants – for a variety of reasons including the fact that he has held that office now for well over three years – contend that he is (Dkt. No. 5).

The question of who determinates qualification for the Office of President also arises under federal law, namely Article II of the United States Constitution, and thus falls under federal subject matter jurisdiction. These are unquestionably "significant federal issues," *Grable*

*& Sons*, 545 U.S. at 312, that would require the exercise of federal question jurisdiction over even well-pleaded state law claims.

In fact, federal constitutional interpretation might well preempt any state law claim involving presidential qualifications, including Plaintiffs' misrepresentation claims. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (U.S. 1985) (in the context of labor-relations law, holding that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a [federal] § 301 claim, or dismissed as pre-empted by federal labor-contract law") (internal citations omitted). This is true because "there could be as many state-law principles as there are States," which in this case would lead to inconsistent interpretations of Article II. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 406 (U.S. 1988) (citing *Allis-Chalmers*). It is of paramount concern that Article II's provisions are interpreted uniformly across the nation. Allowing a Tennessee state court to interpret Article II of the U.S. Constitution and define the qualifications for a candidate for U.S. President would open a Pandora's Box of multi-state litigation on the interpretation of Article II leading to an untenable patchwork of state-by-state federal voting laws. This would leave open the absurd possibility that a President of the United States could be President in Tennessee but not in Kentucky. This absurdity is easily eliminated by deciding the question of qualifications at the federal level where Article II's requirements can be uniformly interpreted and applied across the entire country – an obvious necessity in determining the qualifications of the leader of the entire nation. Thus, Plaintiffs' claims are appropriately resolved by a federal court applying federal law to a federal question.

The obviousness of this position, however, is utterly lost upon Plaintiffs, who never address why a state court is better positioned to interpret Article II's requirements than this Court. Presumably Plaintiffs ignore the question because the answer so clearly works against

them, and there is no colorable, reasonable, or legal reason why a state court should make the determination of who can and who cannot hold the office of President of the United States.

## CONCLUSION

Based on the foregoing, this Court must deny the Motion and exercise federal question jurisdiction over this case.

Submitted this 2nd day of April, 2012.

By:   /s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (BPR#023045)
Benjamin A. Gastel (BPR#028699)
BRANSTETTER, STRANCH
 & JENNINGS, PLLC
227 Second Avenue North, 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
Facsimile:  615/255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Counsel for the Democratic National Party, the Tennessee Democratic Party, Debbie Wasserman-Schultz and Chip Forrester*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via US Mail, postage prepaid, on April 2, 2012, upon:

Van Irion
Liberty Legal Foundation
9040 Executive Park Dr., Ste. 200
Knoxville, TN 37923

                                      /s/   J. Gerard Stranch, IV
                                      J. Gerard Stranch, IV