# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

LIBERTY LEGAL FOUNDATION;
JOHN DUMMETT;
LEONARD VOLODARSKY;
CREG MARONEY,

      Plaintiffs

                                      CASE NO: 2:12-cv-02143-cgc

      v.

NATIONAL DEMOCRATIC PARTY
of the USA, Inc.;
DEMOCRATIC NATIONAL COMMITTEE;
DEBBIE WASSERMAN SCHULTZ, and
CHIP FORRESTER

      Defendants

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

Pursuant to this Court's Rules, Plaintiffs submit this Opposition and Memorandum in Opposition to Defendant Democratic National Committee ("DNC"), Defendant Tennessee Democratic Party ("TNDP"), Defendant Forrester, and Defendant Schultz's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Contrary to the Defendant's Assertion, No Federal Court has Ruled on the Question Presented Since 1874

The Defendants attempt to negate the importance of the instant lawsuit by asserting that "Several courts at both the federal and state level have unfortunately had to address these ridiculous allegations…all of the previous filed suits proved baseless." *See* Doc. 5, Def.'s Mtn. at 2. However, nine pages later, in a footnote, the Defendants acknowledge that "Only one court

has reached the merits of whether President Obama is a 'natural born citizen.'" *See* Doc. 5, Def.'s Mtn. at 11, FN5. That court was an Indiana state court.

The fact is that no federal court has defined the term "natural born citizen" in its holding since the U.S. Supreme Court's holding in *Minor v. Happersett*. 88 U.S. 162, 167 (1874).

While over 100 cases have been filed in the past four years challenging candidate Obama's constitutional eligibility to hold the office of President, almost all of those cases have been dismissed on procedural grounds. To the Plaintiffs' knowledge only three cases have ruled on the substantive issue, and two of those three had already held a procedural ground to be determinative, but felt compelled to violate the doctrine of judicial restraint by commenting on the substantive issue after determining that they didn't have jurisdiction to reach the substantive issue. *Ankeny v. Governor of the State of Indiana*, 916 N.E.2d 678, (Ind. App. 2010); *Allen v. Ariz. Democratic Party*, No. C20121217 (Ariz. Prima Cnty. Super. Ct. 2012) (citing Ankeny, 916 N.E.2d 678); *Welden v. Obama*, No. 1215137-60 (Ga. OSAH 2012). Exactly zero federal courts have ruled on the merits of applying Article II eligibility requirements to candidate Obama.[1]

---

[1] The Defendants accuse the Plaintiffs of "an obvious attempt to demean the President and the office" by referring to Mr. Obama as "Mr. Obama." Doc. 5, Defs.' Mot. at FN2. However, the Plaintiffs' complaint specifically stated: "Hereinafter this Complaint will refer to President Obama, also known as Barack Hussein Obama Jr., Barack Obama II, and Barry Soetoro, as "Mr. Obama." This reference is not intended to be disrespectful to the office of the President or to the individual Barack Obama. It is used only to identify the individual, separate from the office, and to simplify communication for purposes of this Complaint." 1st Amd. Compl. at FN2. The Defendants also insist upon referring to candidate Obama as "President Obama." Doc. 5, Defs.' Mot. at FN2. However, this litigation is directed toward an individual candidate's eligibility to run for office. For purposes of the 2012 election candidate Obama is not yet President. Therefore, referring to him as "President Obama" is inaccurate for the purposes of this litigation because he has not yet been elected to the term of office for which the upcoming election is being held.

Therefore, the Defendants statement that "all of the previously filed suits proved baseless" is unsupported because only one state administrative court has reached the merits of Article II eligibility. *Welden v. Obama*, No. 1215137-60 (Ga. OSAH 2012).[2]

## II.    The Instant Case is Unique

The first five paragraphs of Plaintiffs' complaint distinguish the Plaintiffs' lawsuit from any of the cases referred to by the Defendants.

Most importantly, the named Plaintiffs in the instant case include a Presidential candidate, registered with the Federal Election Commission as running against candidate Obama. Plfs. 1st Amd. Compl. ¶ 31. As discussed below, this difference overcomes the standing issue that has led to dismissal of the huge majority of previous lawsuits challenging candidate Obama's eligibility.

Also, the instant case asserts negligence and fraud against non-governmental defendants. Plfs. 1st Amd. Compl. ¶ 3. Plaintiffs are unaware of any case that has made such claims, or named non-governmental defendants in relation to their handling of the Article II question presented.

As discussed below, the Plaintiffs in the instant case have standing and this Court has jurisdiction to reach the merits of the substantive question presented, which this Court has already recognized as "important and not trivial." Doc 18, Or. Denying Remand, at 9.

---

[2] Liberty Legal Foundation represented one of the plaintiffs in the Georgia Office of State Administration litigation. That litigation has been appealed through all levels of the Georgia State Appellate Courts and LLF is now preparing a petition for certiorari to be filed with the U.S. Supreme Court later this month. To the best of LLF's knowledge this is the first court to deny all procedural grounds for dismissal and actually reach the merits.

### III.  Dicta from *Wong Kim Ark* Cannot Negate the Minor Court's Definition of "Natural Born Citizen" Under Article II

Defendants' motion notes that a handful of state cases have cited dicta from the Supreme Court's *Wong Kim Ark* ("WKA") opinion in order to imply that the Supreme Court's definition of "natural born citizen" in *Minor v. Happersett* was overturned. 169 U.S. 649, 702 (1898); 88 U.S. 162, 167 (1874), respectively. This conclusion of law is demonstrably incorrect.

The holding of *Wong Kim Ark* did not address the definition of the term "natural born citizen" nor did it address Article II qualifications to serve as President. 169 U.S. 649 at 705. The WKA holding didn't define the term "natural born citizen" because the WKA facts did not present a question that required interpretation of Article II. *Id.* at 653. WKA explicitly addressed the scope of 14th Amendment citizenship. *Id.* at 705. However, citizenship under the 14th Amendment is legally distinct from "natural born citizen" as required under Article II for eligibility to serve as President.

Unlike WKA, the *Minor* Court did define "natural born citizen" as that term is used in Article II. *Minor*, 88 U.S. at 167. Unlike WKA, the *Minor* Court expressly used its definition of "natural born citizen" to reach its holding. *Id.*

Because the WKA Court did not need to define Article II "natural born citizen" to reach its holding, any inferences drawn from WKA about the term "natural born citizen" are simply dicta. *Black's Law Dictionary* 465 (Bryan A. Garner ed., 7th ed., West 1999) (Defining Dictum Gratis as, "A court's discussion of points or questions not raised by the record or its suggestion of rules not applicable in the case at bar.")

In contrast, the *Minor* Court's explicit definition of "natural born citizen" was part of its holding because that Court specifically noted that defining this term was required in order to reach its conclusion on the matter presented to the Court. 88 U.S. at 167; *See also Black's Law*

*Dictionary* 737 (Bryan A. Garner ed., 7th ed., West 1999) (Defining Holding as, "A court's determination of a matter of law pivotal to its decision; a principle drawn from such a decision.").

Therefore, the *Minor* Court's definition of "natural born citizen" is binding precedent. *Black's Law Dictionary* 1195 (Bryan A. Garner ed., 7th ed., West 1999) ("[A] case becomes a precedent only for such a general rule as is necessary to the actual decision reached, when shorn of unessential circumstances.") (*quoting* 1 James Parker Hall, Introduction, *American Law and Procedure xlviii* (1952)).

Since dicta cannot change binding precedent, the term "natural born citizen" under Article II is defined by the Supreme Court's decision in *Minor*.

Despite any state-court rulings to the contrary, simply being born in the United States does not necessarily make one a "natural born citizen" as that term is used in Article II. Having a mother that is a citizen of the United States does not necessarily make one a "natural born citizen." According to binding precedent from the U.S. Supreme Court, to be a "natural born citizen" a person must be born in the United States of two parents that are U.S. citizens at the time the "natural born citizen" is born. *Minor*, 88 U.S. at 167.[3]

Venerable rules of construction also prevent use of dicta from the WKA Court to overrule the *Minor* Court's precedential definition of "natural born citizen." As Chief Justice Marshall explained in *Marbury v. Madison*, "It cannot be presumed that any clause in the constitution is intended to be without effect; and therefore such a construction is inadmissible, unless the words

---

[3] The WKA Court recognized that the facts presented in that case did not give that Court an opportunity to change the definition of Article II "natural born citizen." This is why the WKA Court expressly identified its holding as its holding. 169 U.S. at 705. The WKA holding is very narrowly tailored to the facts addressed in the WKA case, and never mentions the term "natural born citizen." *Id.*

require it." 5 U.S. 137, 174 (1805). This principal is also applied to statutory construction: "When there are two acts upon the same subject, the rule is to give effect to both if possible…The intention of the legislature to repeal must be clear and manifest." *United States v. Borden Co.*, 308 U.S. 188, 198 (1939). This venerable principal is still in use: "The Courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *See also United States v. Tynen*, 78 U.S. 88 (1870); *Henderson's Tobacco*, 78 U.S. 652, 657 (1870); *General Motors Acceptance Corp. v. United States*, 286 U.S. 49, 61 (1932); *Wood v. United States*, 41 U.S. 342, 362-363 (1842).

The *Minor* Court's definition of Article II "natural born citizen" co-exists with the WKA Court's determination of the scope of 14th Amendment citizenship. By contrast, any inference that WKA overturns *Minor* would leave Article II "natural born citizen" with no independent meaning from the 14th Amendment's "citizen."

This conclusion is not changed by the fact that naturalized citizens can be distinguished from 14th Amendment citizens. Each legal term, naturalized citizen, 14th Amendment citizen, and Article II natural-born-citizen, must be given independent meaning if such independent meaning can be given. *Marbury*, 5 U.S. at 174; *Borden Co.*, 308 U.S. at 198.

Again, dicta from WKA cannot grant Article II "natural born citizen" status to candidate Obama.[4]

---

[4] *See* Proposed Or., Welden v. Obama, GA OSAH Case #1215137-60, attached as Ex. 1.

## IV.    Plaintiffs Have Standing to Bring Suit

### A.  Plaintiff Dummett

As the Defendants are aware, the 9th Circuit recently confirmed that political candidates for office have standing to challenge the eligibility of rival candidates for the same office. *Drake v. Obama*, 664 F.3d 774, 782-783 (9th Cir. 2011) (*citing Owen v. Mulligan*, 640 F.2d 1130, 1132-33 (9th Cir. 1981). Specifically, the *Drake* Court ruled that an independent candidate for President of the United States has standing to challenge the constitutional qualifications of candidate Obama. *Id. citing Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990).

The Defendants assertion to this Court that *Drake* stands for the proposition that "third party political candidates lacked standing to challenge whether President Obama satisfied 'natural born citizen' requirement," is a misrepresentation. *See* Doc. 5, Defs.' Mot. at 9. The *Drake* Court first found that third party candidates do have standing to challenge competitor candidates, and then determined that such standing becomes moot after the election at issue. *Drake*, 664 F.3d at 782-783.

The "competitive standing" that the 9th Circuit confirmed in *Drake* is exactly the type of standing alleged by Plaintiff Dummett in the instant case. 1st Amd. Compl. ¶¶31-33.

### B.  Liberty Legal Foundation (LLF)

Defendants surprisingly argue that "protecting the rights of voters to have a constitutionally qualified candidate on the state ballot…is not germane" to LLF's purpose of defending basic human rights. Doc. 5, Defs.' Mot. at 10. This argument reflects a shocking lack of understanding regarding the necessity for enforcement of constitutional protections to safeguard basic human rights.

While it should be obvious, apparently it is not obvious enough: LLF's purpose of defending basic human rights includes advocating to have the U.S. Constitution enforced. The Plaintiffs formally request judicial notice of the fact that enforcing the U.S. Constitution will, without doubt, enhance basic human rights.

### C.  One Plaintiff with Standing Allows the Case to Proceed

Finally, and most importantly, only one Plaintiff needs to have standing in order to maintain a suit. *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Because Plaintiff Dummett has standing, all other Plaintiffs in the instant case, including Liberty Legal Foundation, also have standing. The Defendants' motion to dismiss for lack of standing must be **DENIED**.

### V.      Defendants' Preemption Argument Fails

### A. *Robinson* and 3 U.S.C. §15 are Inapplicable

Contrary to Defendants' assertion, *Robinson v. Bowen* and 3 U.S.C. §15 are inapplicable to the instant case. Defs.' Mot. At 8; *citing* 567 F. Supp. 2d at 1147. First, *Robinson* and 3 U.S.C. §15 address the rights and responsibilities of delegates to the electoral college, not Presidential candidate plaintiffs.

More importantly, if *Robinson* had been applicable to the facts at bar, it has been overturned by *Drake v. Obama*. 664 F.3d 774, 782-783 (9th Cir. 2011). *Robinson* held that "[j]udicial review - if any – should occur only after the electoral and Congressional processes have run their course." 567 F. Supp. 2d at 1147. However, the *Drake* Court held that such claims would be justiciable before an election, but moot after the election had been held. 664 F.3d at 784. The 9th Circuit's ruling that such challenges would be moot after the election precludes the District Court's holding that such challenges are precluded before the election.

**B.  Legislation Does Not Negate the Constitution**

Defendants' preemption argument also fails because 3 U.S.C. §15 sets forth procedures for counting electoral votes in Congress, *after the states have determined which electors they will appoint*. In other words, 3 U.S.C. §15 applies to the process that occurs after the general election. 3 U.S.C. §15 has nothing to do with how the states determine which electors they will appoint.

Article II, paragraph 2 states in relevant part "Each state shall appoint, *in such manner as the legislature thereof may direct*, a number of electors…" (emphasis added).

3 U.S.C. §15 sets forth the procedures that are followed pursuant to the third paragraph of Article II. But the Defendants argument would have 3 U.S.C. §15 negate the second paragraph of Article II. The instant litigation is about how the states will determine which electors the states choose to appoint. The instant litigation has nothing to do with how those electors vote in the electoral college process after the election.

If the Defendants' were correct that 3 U.S.C. §15 preempts how states choose electors, this would mean that an act of Congress can take away the States' rights to determine how their elections are to be governed. The Constitutional clause "[I]n such manner as the legislature thereof may direct" would be negated by a simple act of Congress. Congress cannot alter the Constitution, except via the amendment process. *See* Art. V.

If the Defendants argument was correct it would negate all state election laws, everywhere in the country, because according to the Defendants' logic such laws would interfere with the field preemption the Defendants attribute to 3 U.S.C. §15.

All of the problems with the Defendants reading of 3 U.S.C. §15 are supported by, well, simply reading 3 U.S.C. §15. Nothing in the statute indicates or implies an intention to preempt

the States' right to select Presidential electors "in such manner as the legislature thereof may direct."

This is why the 9th Circuit ignored and overturned the *Robinson* Court. *See Drake*, 664 F.3d at 782-783.

### C.  Defendants' Argument that the Will of the People Overrides the Constitution Negates a Primary Purpose of the Constitution

The Defendants argue that "the determination of whether a candidate for President of the United States is constitutionally qualified to hold that office rests, in the first instance with the electorate." Doc. 5, Defs.' Mot. at 11.  This statement again reflects a complete lack of understanding regarding Constitutional protections.

In a Constitutional Republic the power of the majority is limited and cannot infringe upon protected rights of a minority. The Constitution is an anti-majoritarian document; meaning that it protects individuals from invasions and usurpations by the majority. Constitutionally protected rights are held inviolate regardless of the majority's desire to violate them. Without such protections any law enacted by Congress would be valid, even if it denied an individual their right to life, liberty, or property. Without the anti-majoritarian protection of the Constitution, Congress could legalize the killing of all Jews, for example, as was done in World War II Germany. Constitutional requirements are absolute, and must be followed regardless of how popular or unpopular such requirements may be, because they are in place to protect the minority.

The Defendants' presumption that popular vote overrides the Constitution demonstrates their lack of understanding of the Constitution and emphasizes the critical role played by this Court in protecting Americans from a tyrannical majority. This Court has the duty, obligation,

and authority to interpret the Constitution and protect each individual seeking its protection in the face of constitutional violations. *Marbury v. Madison*, 5 U.S. 137, (1805).

The Defendants' motion to dismiss for failure to state a claim upon which relief can be granted due to preemption, must be **DENIED**.

## VI.   Right-to-Associate Precedent Does Not Support Defendant's Motion

The Defendants are correct that "The Tennessee Democratic Party Has A Right To Nominate Whoever It Wants As Its Candidate for President of the United States." Doc. 5, Defs.' Mot. at 14. However, that right does not give the Defendants the additional right to certify to the State of Tennessee that its candidate is constitutionally qualified to hold the office of President when their candidate is actually *not* constitutionally qualified to hold the office of President. In other words, the Defendants' constitutional right to freedom of association does not grant them the additional right to lie to the State of Tennessee.

Contrary to the Defendants' assertion, the Plaintiffs are not challenging the Democratic Party's right to "select a standard bearer who best represents the party's ideologies and preferences." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000). Instead, the Plaintiffs are pointing out that the Defendants' right to select a candidate does not grant them an additional right to misrepresent their candidate's qualifications to officers of the States.

The Defendants' argument morphs right-to-associate precedent into a political party's right to misrepresent facts with impunity. The Defendants argue that a political party's right to determine who will be a member of the party somehow also grants the party a Constitutional right to lie to the States. No precedent supports this argument.

The right to associate has been interpreted to allow private groups to determine who will and will not be members of the group. *Jones*, 530 U.S. at 575; *Democratic Party of U.S. v.*

*Wisconsin*, 450 U.S. 107 (1981); *Duke v. Cleland*, 954 F.2d 1526 (11th Cir. 1992); *Belluso v. Poythress*, 485 F.Supp. 904 (N.D.Ga. 1980). However, no court has extended this right beyond the confines of the private organization. A party can determine who it will include as members. That party can also determine which of those members will be its candidates. However, nothing in the Constitution or freedom-to-associate precedent extends this right to support the Defendants' assertion that they have a right to lie to the States.

Several right-to-associate cases did involve candidates' exclusion from ballots. *See Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107 (1981); *Duke v. Cleland*, 954 F.2d 1526 (11th Cir. 1992); *Belluso v. Poythress*, 485 F.Supp. 904 (N.D.Ga. 1980). However, all of these cases are exactly opposite to the present situation. All involved political parties excluding a candidate because the party did nnt want to be associated with the candidate. In every case cited the candidate sued the party and/or state for inclusion on the ballot after being excluded.

There are no cases where a political party's decision to support a candidate created a Constitutional right to certify false facts as true. Such precedent would place the political party's right-to-lie above the rights of the States and the citizens to not be defrauded. Such precedent would negate any obligation for the political parties to ensure that certifications sent by them to State officers reflect true statements. Such precedent would negate any purpose for the States to require such certifications.

The Plaintiffs' requested relief does nothing to interfere with the rights of the parties to select candidates. The Democratic Party is free to choose Saddam Hussein or Mickey Mouse as their next Presidential candidate. However, they do not have a constitutional right to submit fraudulent or grossly negligent certifications to state officials about their candidates. In the instant case the Plaintiffs' requested relief does nothing to infringe on the Democratic Party's

right of association because the Party can include candidate Obama, or any other individual, in its organization. The Party can choose Mr. Obama, or any other person, to be its "standard bearer." The Party's rights, however, end there.

The parties' Constitutional right to select candidates ends with their right to select candidates. It does not automatically create additional rights to knowingly lie to the States.

Since many candidates have been excluded from ballots for lack of qualification to hold the office sought, we can safely conclude that the Defendant's argument fails. The Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, must be **DENIED**.

### VII.    Plaintiffs' Complaint Properly Alleges Reliance

The Defendants cite precedent that recites the basic elements of negligent misrepresentation and claim that the instant case does not reflect a strict, formulaic application of these elements. Doc. 5, Defs.' Mot. at 17. They argue that the Secretary of State is the one relying on the Defendants' misrepresentation, and the Secretary of State is not one of the Plaintiffs.

However, an elementary understanding of tort law reveals that the reliance element arises from the Plaintiffs' burden to prove causation. Negligent misrepresentation is simply a sub-type of the broader tort of negligence. The elements of negligence are duty, breach of duty, damages, and causation. In the context of the instant case the duty element is the Defendants' general duty to not cause harm; the breach of duty happens to be negligent misrepresentation; the damage is votes being cast for the Plaintiffs' competitor; and that damage is directly caused by Secretary of State's reliance upon the Defendants' negligent misrepresentation.

The fact that the misrepresentation is made to a non-plaintiff does not negate the fact that the harm caused by Defendants' negligence causes damage to the Plaintiffs. The precedent cited by the Defendants recites elements that arise most of the time in the context of negligent misrepresentation. However, these precedent were not intended to create blind adherence to formulaic elements which ignore unpredictable fact patterns that arise in the real world. Procedural and substantive law is all intended to support substantial justice.

In the alternative, Federal Rule of Civil Procedure 15 states that leave to amend shall be freely given when justice so requires. The Plaintiffs have, as stated above, shown that the elements of simple negligence have been properly pled. Should this Court determine that the current complaint does not support a claim of negligent misrepresentation, the Plaintiffs hereby request leave to file an amended complaint to reflect a claim of simple negligence.

The Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, must be **DENIED**.

## VIII.   Defendants DNC and Schultz Should Not be Dismissed

The Defendants final argument is that Defendants DNC and Schultz should be dismissed because Tennessee law makes the TNDP "solely and exclusively responsible" to certify its Presidential candidate to the Tennessee Secretary of State. *See* Doc. 5, Defs.' Mot. at 18; citing Tenn. Code Ann. §2-5-201.

However, §2-5-201 does not contain the language asserted by the Defendants. §2-5-201 states in its entirety: "All ballots used in elections shall be printed and made as provided in this chapter except to the extent that other sections of this title expressly provide otherwise."

Despite pre-litigation research on Tennessee Election Code, LLF is unaware of any code that would make the TNDP "solely and exclusively responsible" to certify its Presidential candidate to the Tennessee Secretary of State.

Assuming, however, that such code exists, it would still fail to create grounds for dismissing Defendants DNC and Schultz. Such code may require the TNDP to submit documents to ensure that a candidate appear on the ballot. However, this would not necessarily preclude the DNC or Schultz from additionally certifying to the Tennessee Secretary of State that the Democratic Party has selected a specific candidate for the office of President.

In other words, despite the existence of such code Defendants DNC and Schultz, in her capacity as Chairman of the DNC, would still be free to send certifications to the Tennessee Secretary of State notifying him that the DNC has selected candidate Obama as the Democratic Party's Presidential candidate and certifying that he is constitutionally qualified to hold that office.

In fact, the allegations contained within Plaintiffs' complaint are based upon past actions taken by Defendants DNC and past Chairmen of the DNC. In 2008 the DNC sent a document to the Tennessee Secretary of State notifying the State that the Democratic Party had selected candidate Obama as the Democratic Party's Presidential candidate for the 2008 Presidential general election. Attached as Ex. 2.

Also, during pre-litigation research performed by Liberty Legal Foundation ("LLF") a staffer working for the Tennessee Secretary of State discussed at length the process followed by the State and confirmed that any certification from the DNC stating that Mr. Obama is the Democratic Party's selected candidate would result in candidate Obama's name appearing on Tennessee ballots, absent a specific objection from the TNDP.

With all this in mind, it is clear that this Court would be unable to provide effective relief absent inclusion of Defendants DNC and Schultz in the instant litigation. Defendants' motion is an attempt to avoid the authority of this Court by ensuring that even if a judgment is entered against the TNDP, candidate Obama will still appear on the Tennessee ballot. If the DNC and Schultz are dismissed they will send the fraudulent certification to the Tennessee Secretary of State despite an ultimate judgment of this Court against the TNDP. The Secretary of State would then be left with a certification from the DNC and silence from the TNDP. Such a circumstance would almost certainly result in candidate Obama appearing on the Tennessee ballot.

This conclusion is supported by the fact that if Defendants DNC and Schultz did not intend to send any certifying documents to Tennessee Secretary of State, these Defendants should be willing to have this Court enter an agreed judgment prohibiting them from sending any such documents. If they have no intention of sending such documents, such an agreed judgment would not prejudice them in any way and would relieve them of further litigation in this case. The only reason for the DNC to refuse to agree to such a judgment is for the DNC to retain its ability to thwart a judgment by this Court against the Democratic Party.

Taking the "pleadings and submissions in a light most favorable to the plaintiffs and views any disputed facts in plaintiffs' favor," it is clear that Defendants DNC and its Chairman have acted in the past and are certain to perform acts this Fall that avail them of the personal jurisdiction of this Court. *Theunissen*, 935 F.2d at 1459.

The Defendants' motion to dismiss Defendants DNC and Shultz "because they are not responsible," must be **DENIED**.

## IX.    Conclusion

For the reasons set forth herein, the Defendants' motion to dismiss must be **DENIED**.

Respectfully submitted on the 12th Day of Ziv, in the year of our Lord 2012 (a.k.a. May 3, 2012).


  s/Van R. Irion_____
Van R. Irion (TNBPR 024519)
Liberty Legal Foundation
9040 Executive Park Drive, Ste. 200
Attorney for Plaintiffs
(423) 208-9953

## CERTIFICATE OF SERVICE

It is hereby certified that on 12th Day of Ziv, Year of our Lord 2012 (a.k.a. May 3, 2012), a copy of "Plaintiffs' Opposition to Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)" was filed electronically. Parties may access this filing through the Court's electronic filing system. A copy of this motion will also be served upon the Defendants via mail.

  s/Van R. Irion_____
Van R. Irion (TNBPR 024519)
Liberty Legal Foundation
9040 Executive Park Drive, Ste. 200
Attorney for Plaintiffs
(423) 208-9953