IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LIBERTY LEGAL FOUNDATION, JOHN DUMMETT, LEONARD VOLODARSKY, CREG MARONEY, <br><br>　　　　Plaintiffs, <br>vs. <br><br>NATIONAL DEMOCRATIC PARTY OF THE USA, INC., DEMOCRATIC NATIONAL COMMITTEE, TENNESSEE DEMOCRATIC PARTY, DEBBIE WASSERMAN SCHULTZ, and CHIP FORRESTER, <br><br>　　　　Defendants. | Case No.  2:12-cv-02143-cgc <br><br><br>Removal of Case No. CH-11-1757-3 From Chancery Court for the State of Tennessee in Shelby County |

## **CONSOLIDATED REPLY IN SUPPORT OF MOTIONS TO DISMISS**

On March 1, 2012, Defendants the Democratic National Committee (the "DNC"), the Tennessee Democratic Party (the "TNDP"), Debbie Wasserman Schultz ("Wasserman Schultz"), and Chip Forrester ("Forrester") (collectively "Defendants")[1], moved this Court on various grounds to dismiss this case in its entirety or in part (*see* Dkt. Nos. 4-9).  On May 3, 2012, Plaintiffs the Liberty Legal Foundation ("LLF"), John Dummett, Leonard Volodarsky, and Creg Maroney (collectively "Plaintiffs") filed their Responses in Opposition to those Motions (Dkt. Nos. 19-21).  Defendants now file this consolidated reply in support of their Motions to Dismiss.

## **INTRODUCTION**

---

[1] Plaintiffs also name the National Democratic Party of the USA, Inc. as a defendant, but this organization is apparently a sham organization, which may be affiliated with the Shelby County Republican Party, and therefore, as explained in greater detail herein, is not a proper party to this lawsuit.  Accordingly, they will not be treated as a proper defendant.

253477　　　　　　　　　　　　　　　　　　1

Despite Plaintiffs' abstract arguments and conflated musings on President Obama's fitness for office, this case is easily resolved without resort to the merits. The dispositive issue in this case is who the arbiter of presidential qualifications is. The answer is irrefutable: *not Plaintiffs*.

The conclusion is irrefutable because it has been reached by *every* federal court to address the issue. This is not the first, nor even the twentieth, case challenging whether President Obama satisfies Article II's requirements to hold the Office of President of the United States. However, as even Plaintiffs must concede, "[e]xactly zero federal courts have ruled on the merits of applying Article II eligibility requirements to candidate Obama." (Dkt. No. 19 at 2). This statistic is not born of coincidence; it is the result mandated by law. The majority of courts addressing this issue have held that plaintiffs lack standing to challenge President Obama's qualifications, and the remaining courts have similarly dismissed these suits on other procedural grounds.[2]

Plaintiffs attempt to downplay this mountain of case law by distinguishing their claims from all the others. However, Plaintiffs' claims are unremarkable. Defendants submit this Reply to briefly highlight the homogenous nature of Plaintiffs' claims with respect to all those that have been previously dismissed, and to urge the Court to dismiss this case as well.

## ARGUMENT

The vast majority of courts faced with qualification challenges regarding President Obama have dispensed with the claims early in litigation due to plaintiffs' lack of standing. The instant case is no different, and all claims against all Defendants should also be dismissed on

---

[2] Two state tribunals have reached the merits of analogous claims and summarily rejected them. *See Ankeny v. Governor,* 916 N.E.2d 678, 684-89 (Ind. Ct. App. 2008) (finding that President Obama is a natural born citizen qualified to hold the office of President of the United States); *Farrar, et. al. v. Obama*, Dkt. No. 1215136-60 (Ga. Secretary of State, 2012) (same).

253477                                                  2

standing grounds. Additionally, Defendants briefly address alternative bases for dismissal. Regardless of the rationale, the end result is the same – Plaintiffs' claims must be dismissed.

I. **Plaintiffs Fail To Cure The Standing Problems That Resulted In The Dismissal Of Other Cases Challenging President Obama's Qualifications**

As Defendants argued in their Motion to Dismiss, Dkt. No. 5, most suits challenging President's Obama's qualifications to hold the Office of the Presidency have been dismissed for plaintiffs' lack of standing. *See, e.g.*, *Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011); *Kerchner v. Obama*, 612 F.3d 204 (3d Cir. 2010); *Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009); *Cohen v. Obama*, 359 F. App'x 40 (10th Cir. 2010); *Craig v. United States*, 340 F. App'x 471 (10th Cir. 2009); *Taitz v. Obama*, 707 F. Supp. 2d 1, (D.D.C. 2010); *Kerchner v. Obama*, 669 F. Supp. 2d 477, 481 (D.N.J. 2009); *Bowhall v. Obama*, 2010 U.S. Dist. LEXIS 127036 (M.D. Ala. Nov. 30, 2010); *Barnett v. Obama*, 2009 U.S. Dist. LEXIS 101206 (C.D. Cal. 2009); *Cook v. Good*, 2009 U.S. Dist. LEXIS 126144 (M.D. Ga. July 16, 2009); *Dawson v. Obama*, 2009 U.S. Dist. LEXIS 16161 (E.D. Cal. Mar. 2, 2009); *Hunter v. U.S. Supreme Court*, 2009 U.S. Dist. LEXIS 3057 (N.D. Tex. Jan. 16, 2009).

Plaintiffs allege that this suit is different because, unlike prior plaintiffs, Plaintiff Dummet is a candidate for the Presidency.[3] However, this argument is based on a misapprehension of the law. It is true that some courts have recognized that political candidates have standing to challenge an opponent's qualifications, commonly called "competitive standing." As the name suggests, competitive standing requires *competition* between the candidates. *See, e.g.*, *Owen v. Mulligan*, 640 F.2d 1130, 1132-1133 (9th Cir. 1981) (finding that

---

[3] Defendants assume, for purposes of the instant Motions, that Plaintiff Dummet has filed papers to run for President with the Federal Election Commission ("FEC"). Plaintiffs make no argument that Plaintiffs Volodarsky or Maroney, who are not candidates, satisfy standing requirements, presumably as a concession that they do not have standing. In fact, Plaintiffs appear to concede, although inartfully, that all Plaintiffs except Plaintiff Dummet lack standing to pursue their claims. *See* Dkt. No. 19 at 8 ("One Plaintiff with Standing Allows the Case to Proceed"). Accordingly, although Defendants believe all Plaintiffs should be dismissed for lack of standing, at a minimum Plaintiffs Voloardsky and Maroney must be dismissed for a lack of standing.

a candidate for office in a general election had standing to challenge his opponent's use of reduced-rate postage for mailing campaign propaganda).  President Obama and Plaintiff Dummet are not election competitors because they will not face each other on the ballot in any election.  Plaintiff Dummet filed papers to be the Republican Party's nominee for President,[4] and so Plaintiff Dummet will face Republican challengers – not President Obama – in that party's primary election.

While Plaintiffs do not address the fact that Plaintiff Dummet and President Obama are not opponents in any election, the logical response for someone in Plaintiff Dummet's position would be that he could win the Republican primary and face President Obama in the November general election.  However, the chances of a Dummet candidacy are so remote that they cannot confer standing on Plaintiffs at this time.  *Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008) ("Plaintiff is a mere candidate hoping to become a California elector pledged to an obscure third-party candidate whose presidential prospects are theoretical at best. Plaintiff has, therefore, no greater stake in the matter than a taxpayer or voter.").

Plaintiffs incorrectly rely on *Drake v. Obama* for the proposition that Plaintiff Dummet has standing in this case based on his filing with the FEC.  664 F.3d 774 (9th Cir. 2011).  Plaintiffs state that "the *Drake* Court ruled that an independent candidate for President of the United States has standing to challenge the constitutional qualifications of candidate Obama." (Dkt. No. 19 at 7 (citing *Drake* at 782-83)).  This is a disingenuous reading of *Drake*.  In that case, the Ninth Circuit ruled that the plaintiffs, who were third-party presidential candidates, lacked standing under the competitive standing doctrine precisely because they were not candidates in a competitive election with then-candidate Obama.  The dispositive issue in that

---

[4] *See* FEC Website identifying all individuals who have filed the relevant Form 2 to run for President of the United States, available at: http://www.fec.gov/press/press2011/presidential_form2nm.shtml.  Interestingly, although Plaintiffs pled that Mr. Volodarsky had also filed papers with the FEC to run for President of the United States (Complaint ¶ 36), his name does not appear on the official FEC list of those candidates.  Yet, Plaintiffs have not amended their Complaint to address this factual inaccuracy.

253477                                                                 4

case was the fact that plaintiffs filed their challenges to President Obama's candidacy after the 2008 election and, thus, the plaintiffs were no longer candidates and therefore lacked standing to sue. *Id*. at 783-84. An honest reading of *Drake* reveals that the competitive standing doctrine works to deprive Plaintiffs of standing rather confer it, precisely because Plaintiff Dummet and President Obama are not opponents in a competitive election. *Drake* is the sole legal citation on which Plaintiffs rely in support of their assertion of standing, which further proves the baselessness of Plaintiffs' assertion.

Further, Plaintiff Dummet does not allege he has sought to appear on the ballot in Tennessee. Because Plaintiffs' Complaint challenges whether President Obama can appear on the Tennessee ballot, this failure deprives Plaintiffs of standing to pursue their claims. *See, e.g.*, *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) ("The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts."). Plaintiff Dummet's mere filing of papers with the FEC is not sufficient to satisfy the "irreducible minimum" requirements of standing to bring claims specific to the State of Tennessee's process of certifying candidates. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974) (holding that a litigant's interest cannot be based on the "generalized interest of all citizens in constitutional governance"); *United States v. Richardson*, 418 U.S. 166, 173-78, 94 S. Ct. 2940, 41 L. Ed. 2d 678 (1974) (interests shared by the general public are insufficient for standing). In short, preventing President Obama from being on the Tennessee ballot will get Plaintiff Dummet no closer to the presidency, or Tennessee's electoral votes, and therefore Plaintiff Dummet cannot show that he has suffered, or will suffer, an injury redressable through the current suit. Accordingly, his claims, and those of all Plaintiffs, must be dismissed.

    **II.**    **Plaintiffs' Claims Fail For A Myriad Of Other Reasons Even Assuming Standing**

Even if this Court were to find that Plaintiffs had standing to bring the instant claims, dismissal would still be appropriate on a variety of other grounds without addressing the merits. In fact, of those district courts that have not dismissed challenges to President Obama's qualifications on standing grounds, most have summarily dismissed, with little discussion, those cases as frivolous. *Hollister v. Soetoro*, 601 F. Supp. 2d 179, 181 (D.D.C. 2009) ("I have already called the interpleader claim 'frivolous' in two interlocutory rulings, and I do so again here."); *see also Mitchell v. No Named Defendant*, 2012 U.S. Dist. LEXIS 52760 (D. Colo. Apr. 16, 2012); *Church of Jesus Christ Christian v. Obama*, 2011 U.S. Dist. LEXIS 119561 (W.D. Mo. Oct. 17, 2011); *Hamrick v. Fukino*, 2009 U.S. Dist. LEXIS 130863 (D. Haw. May 1, 2009); *Herbert v. United States*, 2009 U.S. Dist. LEXIS 3473 (M.D. Fla. Jan. 20, 2009); *Rhodes v. Macdonald*, 2009 U.S. Dist. LEXIS 84743, 6-7 (M.D. Ga. Sept. 16, 2009); *Neely v. Obama*, 2009 U.S. Dist. LEXIS 8622 ( E.D. Mich. Feb. 4, 2009); *Beverly v. Fed. Elections Comm'n*, 2008 U.S. Dist. LEXIS 89854 (E.D. Cal. Oct. 21, 2008); *Roy v. Fed. Election*, 2008 U.S. Dist. LEXIS 93373 (W.D. Wash. Nov. 14, 2008); *Stamper v. United States*, 2008 U.S. Dist. LEXIS 92938 (N.D. Ohio Nov. 4, 2008).

### a. State Court Causes Of Action Challenging Qualifications Are Preempted By Federal Law

The proper process by which to challenge the qualifications of a candidate for President of the United States is outlined in the by the U.S. Constitution.

> Article II prescribes that each state shall appoint, in the manner directed by the state's legislature, the number of presidential electors to which it is constitutionally entitled. The Twelfth Amendment prescribes the manner in which the electors appointed by the states shall in turn elect the president:
>
> "[t]he electors shall meet in their respective states and vote by ballot for President and Vice-President . . . and they shall . . . transmit [their votes] sealed to the seat of the government of the United States, directed to the President of the Senate; -- The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."

253477                                                          6

>Federal legislation further details the process for counting electoral votes in Congress. 3 U.S.C. 15. Section 15 directs that Congress shall be in session on the appropriate day to count the electoral votes, with the President of the Senate presiding. It directs that designated individuals shall open, count and record the electoral votes, and then present the results to the President of the Senate, who shall then "announce the state of the vote." *Ibid*. The statute provides a mechanism for objections then to be registered and resolved:
>
>"[e]very objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received. When all objections so made . . . shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision."
>
>*Ibid*. The Twentieth Amendment further provides,
>
>"if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be elected, and such person shall act accordingly until a President or Vice President shall have qualified."
>
>It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review -- if any -- should occur only after the electoral and Congressional processes have run their course.

*Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1146-1147 (N.D. Cal. 2008) (citing *Texas v. United*

*States*, 523 U.S. 296, 300-02, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)).

Plaintiffs attempt to circumvent this Constitutional procedure on specious grounds. First, Plaintiffs state that *Robinson* was overruled by *Drake*. (Dkt. No. 19 at 80). However, *Drake* and *Robinson* deal with distinguishable electoral challenges. The *Drake* Court found that plaintiff candidates lacked standing to challenge to President Obama's qualifications to hold the office of President of the United States after he was sworn into office. *Robinson*, on the other hand, addressed the situation at bar: an attempt to keep a properly nominated candidate's name off a state ballot prior to the election. 567 F. Supp. 2d at 1144-45. There, the court determined that the election process and the certification of electoral votes in the Congress provided the proper avenue to challenge a candidate's qualifications to hold the office of President of the United States. *Id.* at 1147-48. This holding is clearly applicable to the instant case.

Plaintiffs next claim that "legislation does not preempt the Constitution." This argument is made irrelevant by the fact that the procedure for challenging a President's qualifications is found in the U.S. Constitution. *See Robinson* at 1146-47 (citing the Twelfth and Twentieth Amendments). The argument also misstates Defendants' assertion that state law causes of action such as intentional and negligent misrepresentation, the exact claims brought by Plaintiffs here, are preempted by federal law, which lays out the process for challenging a candidate's qualifications to hold the office of President of the United States. (Dkt. No. 5 at 11-14.)

### b. Plaintiffs Fail To Show They State A Claim Under State Law

Plaintiffs have done nothing to cure the failure of their Complaint to state a claim under Tennessee law. This failure of the pleadings is the basis for Defendants' Motions pursuant to Rules 12(b)(1) and 12(b)(6). Defendants assert that the Complaint is so devoid of substantive allegations that it not only fails to meet the "short and plaint statement" requirement of Rule 8(a), but it also deprives the Court of subject-matter jurisdiction. (Dkt. No. 5 at 6-17). *See, e.g.*, *Craig v. United States*, 340 F. App'x 471, 474 (10th Cir. 2009) (dismissing a challenge to President

Obama's qualifications pursuant to Rule 12(b)(1) because the Complaint failed to state allegations sufficient to establish an redressable injury or a case or controversy).

Plaintiffs respond to these arguments in a conclusory fashion, supplying neither a citation of law nor a citation to the Complaint. (Dkt. No. 19 at 13-14). Instead, Plaintiffs simply that that their "Complaint properly alleges reliance," Dkt. No. 19 at 13, and then proceed to argue that they don't have to prove reliance anyway, Dkt. No. 19 at 13 (reciting the elements of a negligence action as duty, breach, damages and causation). Further, Plaintiffs are simply wrong when they claim that a "misrepresentation made to a non-plaintiff does not negate the fact that the harm caused by Defendants' negligence causes damage to the Plaintiffs," Dkt. No. 19 at 14, and they point to no law to support such an assertion. Plaintiffs have made no effort to supplement their pleadings, which are inadequate to confer subject-matter jurisdiction on this court and fail to state a claim as to which relief can be granted for the reasons described in Defendants' Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) (Dkt. No. 5).

    c. **Plaintiffs Fail To Show That This Suit Does Not Constitutionally Interfere With Defendants' Rights To Associate**

Plaintiffs next make the absurd argument that Defendants' rights to freely associate and "select a standard bearer who best represents the party's ideologies and preferences," *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000), does not "grant [Defendants] the additional right to lie to the State of Tennessee." (Dkt. No. 19 at 11.) *See also Kurita v. State Primary Bd. of the Tenn. Democratic Party,* Case No. 08-0948, 2008 U.S. Dist. LEXIS 83278 (M.D. Tenn. Oct. 17, 2008). This is obviously a red herring meant to distract the Court.

Plaintiffs cannot point to any statute or rule of Tennessee that requires the TNDP to certify that their candidate is constitutionally qualified to hold the office of President of the United States. Rather, the TNDP merely certifies who the nominee is for placement on the state

ballot. *See* Tenn. Code Ann. § 2-13-201(a)(1). The process to determine that nominee's qualifications is left to others, as described in the previous section. By submitting President Obama's name to the Tennessee Secretary of State Division of Elections, the TNDP will simply claim that President Obama is the democratic nominee for the 2012 general election. That will be a true statement, President Obama will in fact be that nominee. Whether he is qualified to hold that office is exclusively a matter of federal, not state, jurisdiction.

### d. The DNC, Wasserman-Schultz, Forrester, And The National Democratic Party Of The USA, Inc. Should Also Be Dismissed From This Case Because They Are Not Responsible For The Conduct Of Which Plaintiffs Complain

Defendants assert that Plaintiffs claims should be dismissed in their entirety against all Defendants. In addition to the above-cited bases for dismissal, Defendants urge this Court to dismiss the claims as to Defendants DNC, Wasserman-Schultz, Forrester, and the National Democratic Party of the USA, Inc. for the following reasons.

#### i. Under Tennessee law, only statewide political parties can identify the political party's nominee for an election

Under Tenn. Code Ann. § 2-13-201(a)(1),[5] "no person's name may be shown on a ballot as the nominee of a political party…unless the political party…is a statewide political party." A statewide political party is required to have a "state executive committee" elected by a specific process mandated by statute, and this committee is charged with performing the duties of the statewide political party. *See* Tenn. Code Ann. §§ 2-13-101 through 104. While Plaintiffs make no allegation as to the identity of the state executive committee for the Democratic Party in Tennessee, public documents reveals that the TNDP is the entity responsible for submitting the name of the Democratic Party's nominee pursuant to Tenn. Code Ann. § 2-13-201.[6]

---

[5] Defendant in its initial brief misidentified this statute as Tenn. Code Ann. 2-5-201.
[6] The TNDP's bylaws are publically available at: http://tndp.org/docs/ByLaws/00-TNDP%20Bylaws_10-01-2011.pdf.

253477 10

Defendants DNC and Wasserman-Schultz are not proper defendants because they are not "statewide political parties" or even affiliated with the executive committee of TNDP. Similarly, because it falls to the "statewide political party" to identify the nominee, Chip Forrester, who is chairman of the TNDP, should also be dismissed as this case seeks to enjoin the actions of the TNDP, not Mr. Forrester personally. These parties appear to have only been named either because Plaintiffs failed to properly investigate the nature of their claims or, more likely, to harass the political opponents of the Plaintiffs. Accordingly, a Rule 11 motion will soon be filed by the Defendants seeking sanctions for Plaintiffs' clear violations of Rule 11 in naming these parties.

### ii. The Court lacks personal jurisdiction over the DNC and Debbie Wasserman Schultz

The Complaint does not contain a single allegation of any activity undertaken by the DNC or Wasserman-Schultz that took place in this state that would justify the exercise of personal jurisdiction against these parties. Plaintiffs identify the following activities on behalf of these parties that support the exercise of personal jurisdiction: 1) signing certification documents identifying President Obama as the Democratic Party's nominee; 2) sending that certification to the Tennessee Secretary of State; and 3) knowing that such certification is required to have the Tennessee Secretary of State place candidate Obama's name on Tennessee ballots. (Dkt. No. 20 at 2).

The first and third of these activities are not actions that are taken in this jurisdiction. The second activity, as explained above, is not the responsibility of the DNC or Wasserman-Schutlz under state election law, but rather the sole responsibility of the TNDP executive committee. Accordingly, Plaintiffs have failed to show that the Defendants, the DNC and Wasserman-Schultz have purposefully availed themselves of this Court's jurisdiction, and the complaint against them must be dismissed. *International Shoe Co. v. Wash.*, 326 U.S. 310, 316

(1945) (internal citations omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

### iii. The National Democratic Party of the USA, Inc. is not a proper party to this suit

For similar reasons the National Democratic Party of the USA, Inc. (the "NDP USA"), is an improper party to this suit. The Complaint does not allege the NDP USA is a statewide political party, it only contains the unfounded obligation that the NDP USA will submit the Democratic Party's nominee to the Tennessee Secretary of State Division of Elections. (Complaint ¶ 1) But as explained above, this is the sole responsibility of the TNDP.

Plaintiffs justify the naming of this party because it is the only entity listed on the Tennessee Secretary of State's website. (Dkt. No. 21 at 7.) However, this displays Plaintiffs' ignorance of Tennessee law and failure to conduct a reasonable investigation prior to filing suit. Had Plaintiff conducted a reasonable search of Tennessee statutory law, Plaintiffs would have learned that statewide political parties that are responsible for the conduct of which Plaintiffs complain are not corporations, businesses, charities, or non-profit organizations subject to filing with the Tennessee Secretary of State. *See* Tenn. Code Ann. §§ 48-101-504 (requiring certain organizations to register with the Tennessee Secretary of State) and 48-101-502 (exempting political parties from those registration requirements). Accordingly, had Plaintiffs conducted a reasonable search of Tennessee law, it would have learned that the reason why the TNDP, the proper "statewide political party" responsible for the conduct complained of here, did not appear on the Tennessee Secretary of State's website is that it was exempt from registration. Moreover, had Plaintiffs conducted this reasonable search, it should have tipped off Plaintiffs that a corporation so registered with the Tennessee Secretary of State was not a proper political party as that term is used in Title 2 (Elections) of the Tennessee Code. Accordingly, because the NDP USA is not a proper party to this lawsuit, it should be dismissed.

253477                                                    12

### III.    Venue Is Not Proper in This District

Given that the NDP USA is not a proper party to this suit, and it is the only party to have residence in this jurisdiction, venue in this district is not proper.  Plaintiffs incorrectly claim that the actions complained of arise in this jurisdiction because the Tennessee Secretary of State will disseminate ballots to every county in Tennessee.  (Dkt. No. 21 at 4).  This is simply not sufficient to justify venue in this jurisdiction.  The actions of a non-party cannot be the basis for establishing venue against a party. The Complaint is wholly devoid of any action taken by the TNDP in this jurisdiction that relates to this lawsuit.  Accordingly, the Complaint must be dismissed for improper venue.

Moreover, even if this were not the case, Plaintiffs never addressed the argument that the Middle District of Tennessee is a more convenient venue for this case under 28 U.S.C. § 1404(a).  (*See* Dkt. No. 9 at 6-7.)  Presumably, Plaintiffs never address this argument because there is no basis for which this case can remain in this jurisdiction.  None of the witnesses related to this case, none of the activities related to this case, and none of the parties to this case can be found in this jurisdiction, whereas the Middle District of Tennessee is where witnesses with both the Tennessee Secretary of State's office and the TNDP can be found, the representations that form the basis of the Complaint will be made in the Middle District of Tennessee, and the TNDP, the only proper party to this case, has its principal place of business in that district.  Accordingly, if the Court is inclined to take up the transfer of venue issue before addressing the motions to dismiss, the Court should transfer this case to the Middle District of Tennessee and allow that court to address the motions to dismiss.

The remainder of Plaintiffs arguments in opposition to the instant Motions, *e.g*., the power of the majority, human rights, etc., constitute empty rhetoric absent any basis in law.

Defendants do not respond to those arguments in an effort to expend no more of their, and the Court's, time as necessary on this case.

## CONCLUSION

For the forgoing reasons, this case should be dismissed in its entirety, or, in the alternative, the Court should transfer this case to the Middle District of Tennessee and allow that Court to rule on the motions to dismiss.

Submitted this 14th day of May, 2012.

          By:    /s/ J. Gerard Stranch, IV
                  J. Gerard Stranch, IV (BPR#023045)
                  Benjamin A. Gastel (BPR#028699)
                  BRANSTETTER, STRANCH
                   & JENNINGS, PLLC
                  227 Second Avenue North, 4th Floor
                  Nashville, TN 37201-1631
                  Telephone: 615/254-8801
                  Facsimile: 615/255-5419
                  gerards@branstetterlaw.com
                  beng@branstetterlaw.com

*Counsel for the Democratic National Committee, the Tennessee Democratic Party, Debbie Wasserman Schultz, and Chip Forrester*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was served via the Court's CM/ECF system on May 14, 2012, upon:

Van Irion
Liberty Legal Foundation
9040 Executive Park Dr., Ste. 200
Knoxville, TN 37923

                                    /s/   J. Gerard Stranch, IV
                                    J. Gerard Stranch, IV