IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LIBERTY LEGAL FOUNDATION, JOHN DUMMETT, LEONARD VOLODARSKY, CREG MARONEY,<br><br>  Plaintiffs,<br>vs.<br><br>NATIONAL DEMOCRATIC PARTY OF THE USA, INC., DEMOCRATIC NATIONAL COMMITTEE, TENNESSEE DEMOCRATIC PARTY, DEBBIE WASSERMAN SCHULTZ, and CHIP FORRESTER,<br><br>  Defendants. | Case No. 2:12-cv-02143-cgc<br><br>Removal of Case No. CH-11-1757-3 From Chancery Court for the State of Tennessee in Shelby County |

## DEFENDANTS' CONSOLIDATED MOTION FOR AND MEMORANDUM IN SUPPORT OF SANCTIONS

Pursuant to Fed. R. Civ. P. Rule 11 and 28 U.S.C. § 1927, Defendants, the Tennessee Democratic Party ("TNDP"), and Chip Forrester (collectively the "TNDP Defendants") file this Consolidated Motion and Memorandum in Support of Sanctions requesting this Court impose sanctions against Plaintiffs Liberty Legal Foundation, John Dummett, Leonard Volodarsky and Creg Maroney (collectively the "Plaintiffs") and Plaintiffs' counsel because Plaintiffs' claims are: 1) offered for an improper purpose; 2) not warranted under existing facts and law and are frivolous; and/or 3) aimed at unreasonably and vexatiously imposing undue costs on the Defendants.

## INTRODUCTION

This lawsuit has no basis in fact and law. Had Plaintiffs and their counsel performed a reasonable search of relevant precedent and publicly available information, Plaintiffs and their

251612                1

counsel would have known that this lawsuit was frivolous, misguided, and legally unfounded. Yet Plaintiffs and their counsel did not perform such a search most likely because Plaintiffs and their counsel offer this suit not for its merits but simply to harass and annoy the parties and through them President Barack Obama.

As the Court is well aware, this is obviously not the first time that President Obama's political foes have pursued these frivolous claims. No less than eighteen different cases in various federal and state tribunals have been filed challenging President Obama's qualifications to hold the office of President of the United States,[1] and, as should be abundantly obvious, none of these cases have succeeded. All that have reached a decision have been dismissed on the pleadings or on the merits, and some have resulted in sanctions against those bringing these types of claims. *See e.g.*, *Kerchner*, 612 F.3d 204 (sanctioning attempts to challenge President Obama's eligibility to hold the Office of the President); *Rhodes v. Macdonald*, 2009 U.S. Dist. LEXIS 85485 (M.D. Ga. 2009) (same); *see also Ankeny v. Governor,* 916 N.E.2d 678, 684-89 (Ind. Ct. App. 2008) (finding that President Obama is a natural born citizen qualified to hold the office of President of the United States); *Farrar, et. al. v. Obama*, Dkt. No. 1215136-60 (Ga. Secretary of State, 2012) (same).

---

[1] The following cases have proceeded to decisions in federal appellate courts. *Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011) (Constitutional claims by military personnel, taxpayers, political representatives, a family relative, and candidates against the President based on his alleged ineligibility to hold office were properly dismissed for lack of Article III standing); *Kerchner v. Obama*, 612 F.3d 204 (3d Cir. 2010) (Even if placing an ineligible candidate on the ballot harmed voters, the injury was too general for U.S. Const. art. III standing as all voters had an interest in proper application of the U.S. Constitution and laws; *Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) (An order dismissing an action seeking a declaratory judgment that defendant then-Presidential candidate was ineligible under U.S. Const. art. II, § 1, cl. 5, and an injunction barring him from running for President was affirmed because the plaintiff lacked standing because he had suffered no injury particularized to him); *In Re Paul Andrew Mitchell*, 304 F. App'x. 113 (3rd Cir., Dec. 22, 2008) (denying petition for writ of mandamus regarding challenge to Obama's eligibility). For a list of all cases located by Defendants' counsel which contain allegations that President Obama fails to satisfy Article II standing requirements, see **Exhibit A**.

The Court should put an end to these meritless attacks on President Obama by sanctioning the conduct of Plaintiffs and their counsel under either Rule 11 or 28 U.S.C. § 1927.

## BACKGROUND

The Amended Complaint's sole purpose is to prevent President Obama's name from appearing on the Tennessee ballot. (Amended Complaint ¶¶ 1, 4.) The Amended Complaint alleges that President Obama is not a natural-born citizen or is otherwise not qualified to hold the Office of President of the United States and therefore his name should not appear on the Tennessee ballot. (Amended Complaint ¶ 1.)

Plaintiffs seek to enjoin the Defendants from filing relevant documents with the Tennessee Secretary of State identifying President Obama as the Democratic candidate in the upcoming November 2012 Presidential Election. (Amended Complaint ¶¶ 4, 7-8.) Plaintiffs also seek a declaration that any representation by the Defendants that President Obama is qualified to hold the office of the President of the United States would constitute negligence or fraud, and they seek an injunction preventing the Defendants from issuing any letters, certificates, or other documents to the Tennessee Secretary of State indicating that President Obama is the TNDP's nominee for the 2012 presidential election. (Amended Complaint at Prayer for Relief ¶¶ 1-2.)

After reviewing the Complaint and other pleadings filed by the Plaintiffs in Shelby County, which Plaintiffs filed prior to Defendants' proper removal of this case to this Court, Defendants sent, on March 1, 2012, a Rule 11 letter to Plaintiffs' counsel demanding Plaintiffs withdraw their Amended Complaint. This letter is attached to the Declaration of Benjamin A. Gastel as Exhibit A ("Gastel Decl.").[2] On March 19, 2012, Plaintiffs' counsel sent a reply email detailing the investigation he undertook prior to filing his Amended Complaint, which principally consisted of reviewing documents with the Tennessee Secretary of State. (Gastel Decl., Ex. B.)

---

[2] This declaration is filed contemporaneously herewith.

Plaintiffs' counsel never claimed that he or the Plaintiffs reviewed: 1) the publically available documents on the TNDP's website; 2) federal law regarding the proper method to challenge the qualifications of a candidate for President of the United States; 3) state election law regarding the process of certifying Democratic nominees for office; and 4) publically available documents with the Tennessee Secretary of State's Division of Elections regarding the process undertaken by the TNDP to certify its candidates.

Had Plaintiffs or their counsel conducted a proper investigation of these materials and relevant legal precedent, Plaintiffs' counsel would have learned: 1) that the TNDP is the authorized representative organization for the Democratic Party in the state of Tennessee; 2) that this lawsuit was not a proper basis to challenge President Obama's qualifications to hold the office of President of the United States and that Plaintiffs lacked standing to bring such claims; 3) that state election law provided for only two statewide political parties: the Democratic Party (represented by the TNDP) and the Republican Party; and 4) that the TNDP is the party that certifies the Democratic Party's nominee for President of the United States to the Tennessee Secretary of State's Division of Elections.

## STANDARD OF REVIEW

"The Federal Rules of Civil Procedure plainly say that a lawyer's signature on a complaint certifies that to the best of the person's knowledge and belief, formed after an inquiry reasonable under the circumstances, the complaint is not being presented for any improper purpose, Fed. R. Civ. P. 11(b)(1), and that the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, Fed. R. Civ. P. 11(b)(2)." *Hollister v. Soetero*, 258 F.R.D.1, 2 (D.D.C. 2009); *see also Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1228-29 (6th Cir. 1989).

"If a pleading…or other paper is signed in violation of [Rule 11], the court…shall impose upon the person who signed it…an appropriate sanction," which can include a "reasonable attorney's fee." *Jackson*, 875 F.2d at 1229. Additionally, "Rule 11 explicitly allows for the imposition of sanctions upon a party responsible for the rule's violation, provided that a represented party is not sanctioned for a violation of subsection (b)(2) involving unwarranted legal contentions." *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997).

Rule 11 "expressly mandates the imposition of sanctions once a violation is found. The selection of the type of sanction to be imposed lies of course within the district court's sound exercise of discretion." *Albright v. Upjohn Co.*, 788 F.2d 1217, 1222 (6th Cir. 1986).

Moreover, courts are empowered by 28 U.S.C. § 1927 to impose sanctions against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. This statute has been interpreted to apply to attorneys that file cases without conducting a reasonable investigation and who file claims that they know or should have known based on publically available documents are meritless. *See e.g., Hale v. Harney*, 786 F.2d 688 (5th Cir. 1986).

## ARGUMENT

Plaintiffs' claims lack any basis in law and fact and Plaintiffs and their counsel are pursuing this lawsuit for the sole purpose of harassing and annoying the Defendants. As this Court is well aware, this lawsuit is nothing more than an ill founded attempt to short-circuit the November 2012 presidential election by keeping President Obama's name off the Tennessee ballot on the well-debunked and baseless charge that he fails to satisfy Article II's requirements to hold the office of President of the United States. As the TNDP Defendants, the Democratic National Committee, and Debbie Wasserman-Schultz have already shown in their respective motions to dismiss, the lawsuit lacks legal support and should be dismissed. (Dkt. Nos. 4-9.)

However, given the utter lack of support for Plaintiffs' claims, and the fact that Plaintiffs appear mainly concerned with harassing and imposing costs upon their political opponents, dismissing this suit in its entirety is hardly sufficient. Plaintiffs and their counsel's conduct in pursuing this action is clearly the type of conduct that Rule 11 and 28 U.S.C. § 1927 is meant to prevent, and sanctions are warranted.

> I. Plaintiffs Should Have Learned After A Reasonable Search That They Lacked Standing To Challenge President Obama's Qualifications To Hold The Office Of President Of The United States

This is not the first time that litigants have attempted to challenge whether President Obama is constitutionally qualified to hold the office of President of the United States. Virtually every one of these cases has been dismissed for lack of standing. See e.g., *Drake v. Obama*, 2011 U.S. App. LEXIS 25763 (9th Cir., Dec. 22, 2011); *Kerchner*, 612 F.3d 204; *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009); *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010); *Wrotnowski v. Bysiewicz*, 289 Conn. 522 (Sup. Ct. Conn. 2008). This is obviously only a sampling of the cases addressing the issue. (*See* discussion *supra*, n. 1 and Ex. A.) If Plaintiffs had conducted a reasonable investigation, Plaintiffs undoubtedly would have become aware of this mountain of case law, and Plaintiffs' suit fails to cure any of these previously-identified standing defects. Accordingly, Plaintiffs' counsel violated Rule 11 when he filed the Amended Complaint. *See Kerchner*, 612 F.3d at 209-210; *Hollister*, 258 F.R.D. at 2-5; *Rhodes v. MacDonald*, 670 F. Supp. 2d at 1373.

Importantly for a case challenging whether President Obama can appear on the Tennessee ballot, none of the individual Plaintiffs are Tennessee residents. Plaintiffs Maroney and Volodarsky are simply American citizens, and are not the first American citizen to try to keep President Obama's name off of a presidential ballot. *See e.g.*, Berg, 586 F.3d at 240 ("Even if we assume that the placement of an ineligible candidate on the presidential ballot harmed Berg,

that injury, including any frustration Berg felt because others refused to act on his view of the law, was too general for the purposes of Article III: Berg shared both his interest in proper application of the Constitution and laws, pari passu with all voters"); *Cohen*, 2008 U.S. Dist. LEXIS 100011, at *1 (dismissing citizen challenge to Obama's eligibility). Plaintiff Maroney cures none of these identified defects and therefore Plaintiffs' counsel filed this complaint in violation of Rule 11. *See Kerchner*, 612 F.3d at 209-210; *Hollister*, 258 F.R.D. at 2-5; *Rhodes v. MacDonald*, 670 F. Supp. 2d at 1373.

Plaintiff Dummett suffers similar flaws. This plaintiff is allegedly a "candidate" for the general 2012 election (Amended Complaint ¶¶ 31 and 36), but has not alleged that he has filed papers with the Tennessee Secretary of State to appear on the ballot in Tennessee and belongs to a recognized political party that could appear on the ballot in Tennessee. (Amended Complaint ¶¶ 31 and 36).[3]

Therefore, these Plaintiffs have failed to cure defects in standing recognized by other courts addressing the same issues, and therefore Plaintiffs' counsel filed the complaint on behalf of these Plaintiffs in violation of Rule 11. *See Kerchner*, 612 F.3d at 209-210; *Hollister*, 258 F.R.D. at 2-5; *Rhodes*, 670 F. Supp. 2d at 1373.

Finally, Plaintiff Liberty Legal Foundation only has associational standing if one of its members has standing, but as discussed above, no members do. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343; *see AFGE v. Clinton*, 180 F.3d 727 (6th Cir. 1999) (holding that an association cannot have standing to sue because the individual members of the association lacked standing). Had Plaintiffs' counsel conducted a reasonable search of relevant case law, it would have known that it lacked standing, but Plaintiff Liberty Legal Foundation

---

[3] For the process undertaken by the Tennessee Secretary of State's Division of Elections to determine who may appear on the ballot, *see* Tenn. Code Ann. § 2-1-104(29). *See also* discussion *supra* at n. 6.

clearly has no desire to conduct itself reasonably.[4] In fact, the Liberty Legal Foundation, along with Plaintiff Liberty Legal Foundation and its counsel, have filed numerous suits against President Obama during his time in office. *See e.g.*, *Liberty Legal Foundation v. Obama*, Case No. 3:10-cv-402, Eastern District of Tennessee (complaint filed Sept. 16, 2010) (seeking to force President Obama to enforce immigration law); *Liberty Legal Foundation v. Obama*, Case No. 5:11-cv-00026 (complaint filed Feb. 11, 2011) (challenging constitutionality of the Patient Protection and Affordable Care Act).

In other words, Plaintiff Liberty Legal Foundation has an ongoing campaign to challenge President Obama's policies in court, and this suit, like the others filed by Plaintiff Liberty Legal Foundation, is frivolous, baseless, and offered for the sole purpose of harassing President Obama and the Defendants. Accordingly, Plaintiffs and Plaintiffs' counsel filed this suit in violation of Rule 11 and Plaintiffs' counsel clearly violated 28 U.S.C. § 1927 in continuing to pursue this litigation based on the sole purpose to harass and annoy the defendants and through them President Obama. *Justice Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008) (imposing sanctions on party when lawsuit was primarily aimed at harassing the political opponents of plaintiffs); *Cruz v. Savage*, 896 F.2d 626 (1d. Cir 1990) (imposing sanctions under 28 U.S.C. § 1927 when case was filed to harass or annoy defendant because by filing lawsuits to harass party, counsel displays "serious and studied disregard for orderly process of justice").

    II.  <u>The Amended Complaint Offers Only Frivolous Theories Of Recovery</u>

Had Plaintiffs' counsel conducted a reasonable search of the relevant law, Plaintiffs' counsel would have learned that Plaintiffs cannot challenge the qualifications of a candidate for President of the United States until after that candidate is elected and the Electoral College vote

---

[4] For additional reasons why Plaintiff Liberty Legal Foundation lacks standing, *see* Defendant's Memorandum in Support of Motion to Dismiss Pursuant To Rule 12(b)(1) and (b)(6), dkt. no. 5 at p. 9-10.

251612        8

is certified by the United States Congress. *See* 3 U.S.C. § 15 (detailing the process by which the electoral college vote is certified by Congress).

Whether a candidate is qualified to hold the office of President of the United States is committed in the first instance to the electorate and then to the United States Congress, which under federal law is charged with certifying the results of the Electoral College vote. "Judicial review -- if any -- should occur only after the electoral and Congressional processes have run their course." *Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1147 (N.D. Cal. 2009) citing *Texas v. United States*, 523 U.S. 296, 300-02, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998).[5] Since Plaintiffs' suit attempts to short-circuit this process, it cannot be successful, and was filed in violation of Rule 11. *Herron v. Jupiter Transp. Co.*, 858 F.2d 332 (6th Cir. 1988) (upholding district court's sanction award where a reasonable inquiry would have confirmed the fact that plaintiff's claims were without factual or legal basis); *Cannon v. Loyola Univ. of Chicago*, 748 F.2d 777 (7th Cir. 1986) (upholding sanctions against plaintiff for filing a complaint that was clearly barred by well established principles).[6]

Plaintiffs' Amended Complaint relies on the absurd notion that the TNDP has an obligation to believe Plaintiffs' worldview and correlated interpretation of the law and take

---

[5] Defendants make this same argument in support of their motion to dismiss. *See* Memorandum in Support of Motion to Dismiss Pursuant To Rule 12(b)(1) and 12(b)(6). Dkt. No. 5, at 12-14.

[6] Plaintiffs' allegation that President Obama is not constitutionally qualified to hold the office of President of the United States because his father was not a United States citizen is also baseless. (Amended Complaint ¶ 9-12.) As Plaintiffs should be aware from a reasonable search of relevant case law and facts, this position is groundless. At least one prior president had a foreign born father, Chester A. Arthur, and every tribunal reaching the merits of Plaintiffs' claims have rejected them. *See Ankeny v. Governor*, 916 N.E.2d 678 (Ind. Ct. App. 2009); *see also Farrar et. al. v. Obama*, Dkt. No. 1215136-60 (Ga. Sec. of State) (Feb. 3, 2012). Specifically, and as outlined in *Ankeny*, the Court held that *United States v. Wong Kim Ark*, 168 U.S. 649 (1898) did not require that a natural born citizen had to be born in the United States and have both parents be citizens of the United States. Plaintiffs cite *Wong Kim Ark* in Plaintiffs' Complaint (¶ 13), but, as held by the court in *Ankeny*, Plaintiffs have misread the central holding of this case.

appropriate action in response thereto, despite the fact that Plaintiffs' position is contrary to law and lacks any factual basis. Had Plaintiffs' counsel conducted a reasonable search as to past challenges of President Obama's fitness to hold the Office of President of the United States, Plaintiffs' counsel would have known that his claims were baseless, groundless, and rejected by numerous tribunals across the country already, and occasionally sanctioned. *See e.g.*, *Kerchner*, 612 F.3d 204 (sanctioning attempts to challenge President Obama's eligibility to hold the Office of the President); *Rhodes*, 2009 U.S. Dist. LEXIS 85485 (M.D. Ga. 2009) (same); *see also Ankeny,* 916 N.E.2d 678, 684-89 (Ind. Ct. App. 2008) (finding that President Obama is a natural born citizen qualified to hold the office of President of the United States); *Farrar,* Dkt. No. 1215136-60 (same). Given this precedent, and the fact that these suits have been unsuccessful in every venue where they have been filed, and the fact that Plaintiffs' Amended Complaint involves the same allegations of these cases, Plaintiffs' counsel clearly violated Rule 11 by filing the Amended Complaint. *See Kerchner*, 612 F.3d at 209-210 (imposing sanctions against attorney for appealing dismissal of frivolous lawsuit that alleged President Obama was not a natural born citizen); *Hollister*, 258 F.R.D. 1, 2-5 (D.D.C. 2009) (sanctioning an attorney under Rule 11(b)(2) for signing and filing a complaint alleging that President Obama was ineligible to serve as President because he is not a "natural born citizen"), aff'd, *Hollister v. Soetoro*, Nos. 09-5080, 09-5161, 368 Fed. Appx. 154, 2010 U.S. App. LEXIS 6005, 2010 WL 1169793 (D.C. Cir. March 22, 2010); *see also Rhodes v. MacDonald*, 670 F. Supp. 2d 1363, 1373 (M.D. Ga. 2009), aff'd, *Rhodes v. MacDonald*, No. 09-15418, 368 Fed. Appx. 949 (11th Cir. March 15, 2010).[7]

---

[7] Plaintiffs' suit must also fail because it challenges the internal workings of a state political party. The bylaws of the TNDP detail the process by which the TNDP selects its nominees for inclusion in the Tennessee general election ballot. Plaintiffs here have not followed that process and do not even allege to be members of the democratic party. Had Plaintiffs' counsel conducted a reasonable search of the bylaws of the TNDP, relevant case law, and all publically available information, Plaintiffs' counsel would have known that its lawsuit was improper and

251612                                                         10

### III. Plaintiffs Named An Improper Defendant For the Sole Purpose of Establishing Venue in The Western District And Therefore The Complaint Is Offered For An Improper Purpose

Plaintiffs apparently named the National Democratic Party of the USA, Inc. ("NDC USA") for the sole purpose of establishing venue in Shelby County, Tennessee and/or to leverage a default against that entity against the remaining defendants. This is obviously abuse of the judicial process at its worst, and clearly sanctionable conduct under Rule 11 or 28 U.S.C. § 1927.

As Plaintiffs should have determined from a reasonable investigation, the NDC USA is not a party in interest to this lawsuit because this entity has never been associated with the Democratic Party of the TNDP. The NDC USA is apparently a mere sham organization, possibly organized by the Shelby County Republican Party, in order to use, without authorization and in bad faith, the name "National Democratic Party," possibly for nefarious purposes like this lawsuit. As Plaintiffs should have learned through an investigation of the available public records held and posted on the Tennessee Secretary of State's website, other active names for the NDC USA include the "Shelby County Republican Party, Inc." *See* Gastel Decl. at Ex. C. A reasonable person would have taken this to mean that the NDC USA had no relationship with the TNDP or the National Democratic Party. Moreover, the Tennessee Secretary of State's website shows that the NDC USA's principal place of business is in Memphis (Gastel Decl., Ex. C) and Plaintiffs are obviously aware that the TNDP is based in Nashville (Declaration of Chip Forrester

---

frivolous because it challenges the internal workings of a political party which has a "First Amendment right to choose its own candidate for the general election." *Kurita v. State Primary Bd. of the Tenn. Democratic Party*, Case No. 3:08-0948, 2008 U.S. Dist. LEXIS 83278, citing *California Democratic Party v. Jones*, 530 U.S. 567, 575, 120 S. Ct. 2402, 147 L. Ed. 2d 502 (2000).[7] *Kurita* is currently pending before the 6th Cir. Court of Appeals. *See Kurita v. State Primary Board*, Case No. 08-00948 (6th Cir.).

¶ 3).[8]  However, Plaintiffs and their counsel only conducted a search for documents filed with the Tennessee Secretary of State's corporations division, which was unreasonable in this instance because political parties like the TNDP are exempt from registering with the Tennessee Secretary of State.  *See* Tenn. Code Ann. §§ 48-101-504 (requiring certain organizations to register with the Tennessee Secretary of State) and 48-101-502 (exempting political parties from those registration requirements); s*ee also* Gastel Decl., Ex. B, letter from Plaintiffs' counsel.

Additionally, if Plaintiffs and their counsel had conducted a reasonable investigation, by obtaining a copy of the publically available bylaws of the TNDP,[9] they would have learned that the NDC USA does not represent the Democratic Party in the state of Tennessee, but is the sole responsibility of the TNDP.  This is also readily apparent by reviewing the TNDP's website.[10]  Moreover, had Plaintiffs conducted a reasonable investigation, they would have learned that the NDC USA does not communicate with the Tennessee Secretary of State's Division of Elections for purposes of submitting names for inclusion on the state's election ballots.  That function is the sole purpose of the TNDP.  (*See* Forrester Decl. ¶ 3.)  Moreover, had Plaintiffs conducted a reasonable search of Tennessee law they would have learned that state political parties are exempt from filing with the Tennessee Secretary of State, making Plaintiffs' reliance on searches of the Secretary of State's website unreasonable.  *See* Tenn. Code Ann. §§ 48-101-504 (requiring certain organizations to register with the Tennessee Secretary of State) and 48-101-502 (exempting political parties from those registration requirements).  Indeed, the fact that the NDC USA filed documents with the Tennessee Secretary of State should have tipped off a reasonable person that the NDC USA is not a political party or associated with the TNDP or the DNC.

---

[8] This Declaration was filed as part of the TNDP Defendants' Motion to Dismiss for lack of venue.  Dkt. No. 9, Ex. A.

[9] A copy of the TNDP bylaws are attached as Exhibit D to the Gastel Decl.

[10] Available at www.tndp.org.

Taken together, these facts should have tipped off a reasonable person that the NDC USA is not a proper party to this lawsuit.

The TNDP Defendants believe Plaintiffs named the NDC USA as a party defendant for the sole purpose of obtaining venue in Shelby County.  Accordingly, naming the NDC USA was in clear violation of Rule 11.  *Damiani v. Adams*, 657 F. Supp 1409 (S.D. Cal. 1987) (imposing Rule 11 sanctions where party sought to file in inconvenient forum to harass defendants and make litigation more difficult for defendants).  This is further supported by the fact that Plaintiffs could have filed in Davidson County, since it named Chip Forrester in the original Complaint and he is a resident of Davidson County.  Under state venue law, Davidson County was clearly a viable venue option, yet Plaintiffs opted to pursue in Shelby County Chancery Court.  *See* Tenn. Code. Ann. § 20-4-101.  Moreover, given the actions complained of, namely representations made to the Tennessee Secretary of State, that occur, or will occur, in Davidson County, venue is proper in that county.  *See id.*

Relatedly, since Plaintiffs knew or should have been aware that the NDC USA did not represent either the national party or the state party, it seems that Plaintiffs also named them as a defendant to obtain a default judgment against them in order to leverage that against the remaining Defendants. This is further supported by the manner in which Plaintiffs effectuated service in this case.  Upon filing the original Complaint, Plaintiffs served only the NDC USA entity and failed to serve Chip Forrester or Debbie Wasserman-Schultz.  Once the time had passed for filing NDC USA's Answer, Plaintiffs then amended Plaintiffs' Complaint to add the only real party in interest, the TNDP.  In the meantime, Plaintiffs had moved for default judgment against the NDC USA. (See Motion for Default Attached as Exhibit D to Notice of Removal, Dkt. No. 1; *see also* Gastel. Decl. Ex. E, Returned Summons Filed by Plaintiffs in

Shelby County Court.)  This type of conduct clearly shows that Plaintiffs and Plaintiffs' counsel are operating in bad faith.

It appears that this is not the first time that Plaintiffs have attempted this maneuver and that a show cause order has been issued against Plaintiffs for this exact same conduct in Arizona. *See Liberty Legal Foundation, et al. v. Nat. Dem. Party of the USA, Inc. et al.*, Case No. 2:11-cv-02089, Order to Show Cause, Dkt. No. 14 (Filed Feb. 29, 2012) (D. Ariz.).  In the Arizona action, Plaintiffs again served the NDC USA, moved for default judgment against it, all while failing to serve the Democratic National Committee ("DNC") and Debbie Wasserman-Schultz. *See Liberty Legal Foundation*, Case No. 2:11-cv-02089, Dkt. Nos. 14 and 16.[11]   This ultimately resulted in the Court issuing a show cause order ordering Plaintiffs to show service upon the DNC and Wasserman-Schultz.  *See Liberty Legal Foundation*, Case No. 2:11-cv-02089, Dkt. No. 16.  Similarly, here, Plaintiffs' counsel has still failed to properly serve the TNDP (the only real party in interest) and Defendant Wasserman-Schultz. (Gastel Decl. Ex. E.)

Obviously, this shows a pattern by Plaintiffs to use a sham organization, the NDC USA, to gain leverage in these baseless actions.  Indeed, when Defendants' counsel pointed out the fact that NDC USA had been improperly named, Plaintiffs' counsel refused to dismiss this entity or to agree to transfer venue to Davidson County.  This is obviously abuse of the judicial process at its worst. Accordingly, Plaintiffs and their counsel filed the Amended Complaint in violation of Rule 11 and violated 28 U.S.C. § 1927 by vexatiously and unreasonably pursuing meritless claims for the sole purpose to harass the Defendants and raise the costs of litigation, and sanctions are warranted.  *See Kerchner*, 612 F.3d at 209-210; *Hollister*, 258 F.R.D. at 2-5; *Rhodes*, 670 F. Supp. 2d at 1373; *Northern Ky. Right to Life Comm. v. Kentucky Registry*, 1998 U.S. App. LEXIS 495 (6th Cir.) (upholding sanctions under 28 U.S.C. § 1927 for bringing

---

[11] A copy of these filings from the case in Arizona are attached as Exhibit F to the Gastel Decl.

"questionable claims against" a defendant personally when suit was proper only against organization).

      IV. <u>Plaintiffs Named Forrester, the DNC And Wasserman-Schultz For The Sole Purpose Of Harassment And Therefore The Complaint Is Offered For An Improper Purpose</u>

Had Plaintiffs and their counsel conducted a reasonable search of publicly available documents, Defendants would have learned that only the TNDP – ***<u>a party that Plaintiffs have still failed to properly serve</u>*** - is a proper party to this lawsuit, and therefore, Defendants appeared to have filed against the DNC, Wasserman-Schultz, and Forrester for the sole purpose of harassing these unnecessary parties. When prompted to explain their rationale in filing against Forrester, the DNC, and Wasserman-Schultz, Plaintiffs' counsel failed to articulate a reasonable basis for pursuing relief against these parties and refused to dismiss any parties but the TNDP from this lawsuit. (Gastel Decl., Ex. B.)

Had Plaintiffs or their counsel conducted a reasonable search of Tennessee election code and the publically available documents concerning the TNDP, Plaintiffs and their counsel would have, of course, learned that Forrester, the DNC, and Wasserman-Schultz are not proper parties to this lawsuit because the complained of action – submission of the Democratic Party's nominee for the 2012 general election – is the sole responsibility of the TNDP.

Specifically, Tenn. Code Ann. § 2-13-201 requires that a person's name be shown on a ballot as the nominee of a political party only if it is submitted by a "statewide political party."[12] *See* Tenn. Code Ann. §§ 2-13-2011 and 2-1-104(29). Moreover, had counsel reviewed the publically available bylaws of the TNDP, Plaintiffs and their counsel would have learned that it

---

[12] A statewide political party is defined as any statewide party that received at least 5% of the vote in the last statewide gubernatorial election or any party that has at least as many members as 2.5% of the number of votes in the last gubernatorial election. Tenn. Code Ann. § 2-1-104(29). A review of the recent gubernatorial election reveals that only two parties meet these thresholds: the Democratic Party and the Republican Party.

251612      15

is the responsibility of the TNDP to "establish[] the procedure for the selection of [Democratic Party] nominees" for elected office.  TNDP Bylaws § 2.b.[13]  In other words, it is the TNDP's sole responsibility to determine how Democratic Party nominees are determined, and Forrester, the DNC nor the NDC USA have any role in that process.

Given this publicly available documentation, it should have been clear to Plaintiffs and their counsel that the TNDP is the only party to this lawsuit.  Nevertheless, Plaintiffs have filed against the DNC, Chip Forrester, and Debbie Wasserman-Schultz, parties that, based on the publicly available documents, are not responsible for identifying the Democratic Party's nominee for President of the United States, and continue to pursue claims against these parties even after informed by Defendants' counsel that these parties are improperly joined.

Plaintiffs have clearly named these additional parties for the sole purpose of harassing and annoying their political opponents.  This is obviously an abuse of the judicial process and clear sanctionable conduct.  *Justice Fieger v Cox*, 524 F.3d 770 (6th Cir. 2008) (imposing sanctions on party when lawsuit was primarily aimed at harassing the political opponents of plaintiffs); *Kentucky Registry*, 1998 U.S. App. LEXIS 495 (upholding sanctions under 28 U.S.C. § 1927 for bringing "questionable claims against" a defendant personally when suit was proper only against organization).

### CONCLUSION

Given the fact that Plaintiffs' claims have no merit and are offered only to harass and annoy the Defendants and that Plaintiffs and their counsel failed to conduct a reasonable investigation into the legal and factual basis of their complaint, sanctions against Plaintiffs and their counsel are warranted either under Rule 11 or 28 U.S.C. § 1927.  Plaintiffs' frivolous,

---

[13] A copy of these bylaws is attached as Exhibit D to the Gastel Decl.  These documents are easily accessed from the TNDP's website.  Gastel Decl., ¶ 5.

vexatious claims are the type that Rule 11 and 28 U.S.C. § 1927 were implemented to prevent, and the Court should exercise such authority and end these tired charades.  An appropriate sanction would be awarding the Defendants their attorney's fees incurred as a result of filing this motion and the related motions to dismiss.  The exact amount of these fees will be provided in subsequent briefing in the event the Court grants this motion.

Submitted this 25th day of May, 2012.


By: /s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (BPR #023045)
Benjamin A. Gastel (BPR# 028699)
BRANSTETTER, STRANCH
 & JENNINGS, PLLC
227 Second Avenue North, 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
Facsimile:  615/250-3932
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Counsel for the Tennessee Democratic Party and Chip Forrester*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via the Court's CM/ECF system, on May 25, 2012, upon:

Van Irion
Liberty Legal Foundation
9040 Executive Park Dr., Ste. 200
Knoxville, TN 37923

/s/   J. Gerard Stranch, IV
J. Gerard Stranch, IV

251612

17