IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LIBERTY LEGAL FOUNDATION, JOHN DUMMETT, LEONARD VOLODARSKY, CREG MARONEY,<br><br>           Plaintiffs,<br>vs.<br><br>NATIONAL DEMOCRATIC PARTY OF THE USA, INC., DEMOCRATIC NATIONAL COMMITTEE, TENNESSEE DEMOCRATIC PARTY, DEBBIE WASSERMAN SCHULTZ, and CHIP FORRESTER,<br><br>           Defendants. | Case No. 2:12-cv-02143-cgc<br><br>Removal of Case No. CH-11-1757-3 From Chancery Court for the State of Tennessee in Shelby County |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

On May 25, 2012, Defendants, the Tennessee Democratic Party ("TNDP"), and Chip Forrester (collectively the "TNDP Defendants"), filed a Consolidated Motion and Memorandum in Support of Sanctions requesting this Court impose sanctions against Plaintiffs Liberty Legal Foundation, John Dummett, Leonard Volodarsky and Creg Maroney (collectively the "Plaintiffs") and Plaintiffs' counsel for violations of Rule 11 and 28 U.S.C. § 1927 (Dkt. No. 25, the "Motion for Sanctions"). On June 8, 2012, the Plaintiffs filed its Opposition to the Motion for Sanctions (Dkt. No. 29, the "Opposition"). The TNDP Defendants now file this Reply in Support of their Motion for Sanctions.

## **INTRODUCTION**

This lawsuit has no basis in fact and law. Rather than attack this central point of the Motion for Sanctions, Plaintiffs instead lead with the bald and unfounded allegation that counsel

255702                                     1

"lied to this Court." This is an unfounded accusation and shows Plaintiffs' inclination towards ad hominen attacks as opposed to tackling the substance of the TNDP Defendants' arguments. Given the highly suspect and inflammatory allegations in Plaintiffs' Complaint, the Court should not be surprised this is Plaintiffs' tactic to avoid taking responsibility for its actions in filing a frivolous lawsuit aimed at keeping President Obama's name off the Tennessee ballot in November's election.

## ARGUMENT

### I.   Plaintiffs' Counsel Did Not Mislead This Court

The tactic of defending a Rule 11 motion by claiming it is the moving party in fact violating Rule 11 is a tired exercise. Plaintiffs spend the majority of their rebuttal attacking Defendants' counsel and not the substance of the allegations which form the basis of the TNDP Defendants' Motion for Sanctions. Such a strategy is particularly off-putting here given the fact that Plaintiffs utterly failed to show how the TNDP Defendants misled this court.

### A.   The DNC Cannot Legally Certify The Name of the Democratic Candidate For President; That is the Sole Responsibility of the TNDP

Plaintiffs first charge that the TNDP Defendants misled this Court ignores Tennessee statutory law and incorrectly relies on a document it purportedly obtained from the Tennessee Secretary of State's Division of Elections. Notwithstanding the document relied upon by Plaintiffs, Tennessee election law is clear that only a "statewide political party" can have its candidate appear on a ballot, and the truth is the Democratic National Committee (the "DNC") is not such an entity under state election law.

As the TNDP Defendants pointed out in its Motion for Sanctions, T.C.A. § 2-13-201 requires that a person's name be shown on a ballot as the nominee of a political party only if it is submitted by a "statewide political party." A "statewide political party" is a term of art under the

state's election code and only certain types of political parties can qualify as a "statewide political party." *See* T.C.A. § 2-13-101. The Tennessee Election Code imposes various obligations on statewide political parties. *See e.g.*, T.C.A. §§ 2-13-102-108. Statewide political parties must operate as the state primary boards (T.C.A. § 2-13-102), elect at a given time a state executive committee (T.C.A. § 2-13-103), conduct regularly scheduled meetings (T.C.A. § 2-13-108), appoint members of county primary boards (T.C.A. § 2-13-110), and furnish information to the state when requested (T.C.A. § 2-13-113).

Plaintiffs fail to show that the DNC is responsible for any of these activities, nor could it because the DNC is not responsible for these activities. As is clear from the TNDP's Bylaws, the TNDP performs these tasks for the Democratic Party in the state of Tennessee and as is abundantly clear from TNDP's Bylaws, the TNDP functions as the "statewide political party" for the Democratic Party in the state of Tennessee. Plaintiffs never claim in defense of their motion, nor allege in their complaint, that the DNC performs any of these tasks. Rather, Plaintiffs solely and exclusively rely on a single document it purportedly obtained from the TN Division of Elections, which has no operative effect of course under the Tennessee Election Code.

The DNC is simply not a "statewide political party" as that term is used in the Tennessee Election Code and a reasonable search of the Tennessee Election Code as well as the publically available TNDP Bylaws would have tipped off a reasonable person to this fact. Plaintiffs of course have displayed no intention, however, of acting reasonably, as evident by their ad hominem attacks that the TNDP Defendants "lied" about who is responsible for submitting the name of the Democratic Party's nominee to the TN Division of Elections. As discussed above, the Tennessee election code is clear that the TNDP is solely and exclusively responsible for that conduct, and Plaintiffs' assertions to the contrary are simply without merit, and their claims that

the TNDP Defendants "lied" about this position displays the bad faith which has been the hallmark of Plaintiffs in this action.

> B. The TDNP Defendants Correctly Claim That Plaintiff Dummett Will Not Appear on the TN Ballot

Plaintiffs' next allegation that Defendants misled this court by claiming that Plaintiffs "have not alleged that [Plaintiff Dummet] has filed papers with the TN Secretary of State to appear on the ballot in Tennessee" is wholly absurd because the statement is true in every conceivable way. First, the statement that Plaintiffs "have not alleged that [Plaintiff Dummet] has filed papers with the TN Secretary of State to appear on the ballot in Tennessee" is a true statement; the complaint is in fact completely devoid of that allegation.

Plaintiffs must acknowledge this fact, but claim the statement is a "willful deception" and "cleverly crafted" because the TNDP Defendants are aware Plaintiff Dummett has filed a Certificate of Write-In Candidacy with the TN Secretary of State. The absurdity of this position should be abundantly clear. Write-in candidates are candidates whose names *by definition* do **<u>NOT APPEAR ON THE BALLOT</u>**.[1] By claiming the TNDP Defendants "willfully deceived" this Court and offering only proof that supports the TNDP Defendants' position that Plaintiff Dummett "will not appear on the ballot in Tennessee" is "zealous" advocacy of the worst kind and further demonstrates Plaintiffs' bad faith in pursuing not only the claims in this Motion for Sanctions, but the claims that form the basis of this lawsuit.

---

[1] Under Tennessee election law, a certificate of write-in candidacy only has the effect of mandating that county and state election officials count the candidate's write-in votes when votes are ultimately tallied. *See* T.C.A. § 2-7-133(i). The certificate of write-in candidacy does not allow someone's name to appear on the ballot. *See e.g.* T.C.A. §§ 2-5-207(d)(1); 2-5-216(a)(3); 2-7-114(b)(2); 2-7-117.

Further, such an argument only goes to show how far Plaintiffs are willing to distort, misdirect, deceive, and suspend reality in pursuit of these frivolous claims. The Court should end this behavior by sanctioning it.

### C.     The TNDP Defendants Correctly Described The Order Of Events In Arizona

As should be clear by now to the Court, Plaintiffs' allegations of the TNDP Defendants' "lies" are "lies" only in Orwellian sense when peace is war, love is hate, and truth is false. Yet, the Plaintiffs continued with this charade and claimed the TNDP misled the court as to the sequence of events in a similar case filed by Plaintiffs in Arizona. The TNDP Defendants alleged that the Plaintiffs sought to obtain a default judgment against the entity known as the National Democratic Party of the USA, Inc. before properly serving the DNC and Wasserman Schultz in Arizona Case (defined below). This is, *again*, a true statement.

In the Arizona action, the Plaintiffs filed a motion for default against the NDC USA on January 23, 2012. *Liberty Legal Foundation, et. al. v. National Democratic Party of the USA Inc., et. al.*, Case No. 2:11-cv-02089-SRB, Dkt. No. 12 (N.D. Ariz.) (hereinafter the "Arizona Case"). On March 28, 2012, the Court in the Arizona Case held that Plaintiffs failed to obtain service over Wasserman Schultz. Arizona Case, Dkt. No. 21. In its own brief, Plaintiffs acknowledge that it did not correctly serve the DNC because the served summons incorrectly named the NDP USA. (Opposition at 4.)

In summary, then, the TNDP Defendants alleged that the Plaintiffs, in the Arizona Case, filed a motion for default against the NDP USA in January, and subsequent court orders and the Plaintiffs' own admission show that they had not obtained legal service over the DNC or Wasserman Schultz by the time they filed that motion. Notwithstanding this clear timeline, Plaintiffs have the temerity to claim that the TNDP Defendants "misled" this Court about the

timeline of events, even though that timeline is fully in line with the TNDP Defendants' allegations.

Plaintiffs' position is simply not consistent with the truth, but is consistent with Plaintiffs' continued bad faith in pursuit of this action. Sanctions are warranted.

## II.     The TNDP Defendants Complied With The Safe Harbor Provision

By receiving the letter of intent to seek Rule 11 sanctions on March 1, 2012, Plaintiffs were on notice that the TNDP Defendants intended to file for Rule 11 sanctions. The Plaintiffs, not surprisingly, did not withdraw its complaints as requested, and the TNDP Defendants then proceeded to file the Rule 11 motion with this Court on May 25, 2012, well outside of the 21 day safe harbor provided for in Rule 11.

Notwithstanding this compliance, Plaintiffs rely on a highly technical reading of Rule 21, which has been rejected by numerous courts of appeal, including the Sixth Circuit. *See e.g.*, *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003) (party's "letter" or "demand" sent to opposing counsel constituted substantial compliance with safe harbor provision). In fact in a situation remarkably similar to the one here, the Second Circuit just last week explicitly rejected the reading of the Rule 11 now urged by Plaintiffs; *Star Mark Mgmt. v. Koon Chun Hing Kee Soy Sauce Factory Ltd.*, 2012 U.S. App. LEXIS 12002 (2d Cir. 2012) (holding that a warning letter served 21 days prior to a Rule 11 motion satisfies Rule 11's safe harbor provision); *Barker v. Bank One*, 1998 U.S. App. LEXIS 17834 (6th Cir. 1998) (same).

The Sixth Circuit has stated that, "[w]e conclude that the purpose of the safe harbor provision was complied with in this case by the warning letters [plaintiff] received." *Barker*, 1998 U.S. App. LEXIS 17834, at *8; *see also Hadden v. Letzgus,* 1997 U.S. App. LEXIS 20001 (6th Cir.) (upholding Rule 11 sanctions and finding that "technical noncompliance did not prejudice the plaintiff."); *Cardillo v. Cardillo*, 260 F. Supp. 2d 402, 419 (D. R.I. 2005) ("This

255702                                   6

Court finds [defendant's] technical noncompliance with Rule 11 therefore does not bar his request for relief [for sanctions]."); *Jeffreys v. Rossi*, 275 F.Supp.2d 463 (S.D.N.Y. 2003) (service of detailed letter outlining anticipated motion was sufficient notice of defendants' intent to move for sanctions and an opportunity to withdraw the offending papers); *Henderson v. Jupiter Aluminum Corp.*, 2006 U.S. Dist. LEXIS 7777 (N.D. IN) (holding that warning letter satisfied Rule 11 safe harbor provision);

In *Star Mark*, the moving party served a Rule 11 letter-notice on opposing counsel, and the Second Circuit concluded that such a letter was sufficient to meet Rule 11's safe harbor requirement. 2012 U.S. App. LEXIS 12002.  The Second Circuit specifically held that:

> Fed. R. Civ. P. 11(c)(2) requires only the service of a motion or the motion. It does not require the service of a memorandum of law or affidavits, nor does it use the words formal fully supported motion. Rule 11 says nothing about requiring service of the brief in support of a Rule 11 motion to trigger the 21 day safe harbor. While a court has suggested that only a fully supported motion satisfies the safe harbor requirement, that is not what Rule 11 requires.

*Id*. at *10-11.  Plaintiffs here make the same mistake as the offending party in *Star Mark* and have confused Rule 11's requirements that Plaintiffs serve the "motion" on the opposing side with serving a fully supported memorandum of law.

Moreover, Plaintiffs' reliance on *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997) (cited in Opposition at 7), is wholly misplaced.  In *Ridder*, the moving party failed to provide any written notice to the opposing side and went directly to filing a Rule 11 motion with the Court.  The Court correctly held that the moving party failed to provide the opposing side 21 days in which to withdraw the allegedly offending paper with the court and the Sixth Circuit denied the moving party sanctions.  This situation is readily distinguishable from the case at bar

where Plaintiffs were put on notice over 50 days prior to the filing of the Motion for Sanctions that the TNDP Defendants intended to seek Rule 11 sanctions with this Court.

In any event, even if Plaintiffs were correct, sanctions would still be warranted under 28 U.S.C. § 1927 because Rule 11's safe harbor requirement does not apply to the Court's authority to impose sanctions under that statute.[2]

Therefore, Plaintiffs' attempts to avoid sanctions on a mere technicality are misplaced and not in accordance with Rule 11 requirements. Unfortunately, for Plaintiffs to avoid sanctions it actually must show that its conduct has complied with Rule 11, a standard that Plaintiffs, as the Court should now understand given the absurd positions already taken in defense of its conduct, cannot possibly satisfy.

### III. Plaintiffs and Plaintiffs' Counsel Have Clearly Violated Rule 11 And Sanctions Are Warranted

#### A. Plaintiffs and Plaintiffs' Counsel's Justification For A "Reasonable Inquiry" Is Baseless

Plaintiffs now admit that the only "inquiry" made in finding entities that represent the Democratic Party in this state was searching the TN Secretary of State's website. As the TNDP Defendants explained in their Motion for Sanctions, this inquiry is by itself not reasonable because political parties like the TNDP are exempt from filing requirements with the TN Secretary of State. (Motion for Sanctions at 12.) Interestingly and tellingly, Plaintiffs never address this central allegation and once again ignore reality in favor of their own distorted view. Regardless of how many times they searched the TN Secretary of State's website, the search is unreasonable because Plaintiffs are not looking to the correct source of information, as by definition the entity it wanted to sue – namely the state arm of the Democratic Party – does not register with the TN Secretary of State. *See* Tenn. Code Ann. §§ 48-101-502 and 504.

---

[2] Moreover, the TNDP Defendants would happily withdraw the Motion for Sanctions if Plaintiffs would dismiss the Complaint with prejudice.

A simple Google search of "Tennessee Democratic Party" would have yielded the information Plaintiffs sought and taken Plaintiffs straight to the TNDP's website where the publicly available bylaws are posted. They now admit they did not even search this well-known source of information.[3]

By failing to make a reasonable search, Plaintiffs named an incorrect party, obtained venue in the wrong location, and continue to refuse to change venue to the correct jurisdiction, even when faced with the truth of their (apparent) mistake. Plaintiffs also make the absurd claim that venue is proper in Shelby County even without the presence of NDP USA in this case. That is clearly false and contrary to the state of Tennessee's venue statute. In transitory actions such as these, venue is proper where the action arises or where the defendant resides. T.C.A. §20-4-104(a). The TNDP and the DNC cannot reasonably be construed to reside in Shelby County and the complaint is utterly devoid of any allegation that they in fact do so reside. (*See* generally Complaint.) The NDP USA is the only Defendant that resides in that county, they are the sole basis which gives Plaintiffs the right to pursue this action in this jurisdiction, but they are clearly an improperly named Defendant and any reasonable inquiry would have informed Plaintiffs of this fact. They did not do that, they searched the wrong database on the incorrect, unfounded assumption that political parties are corporations, and then when presented with proof of their error, instead of correcting it, they ignore reality in favor of their own distorted view.

Plaintiffs' utter failure to conduct a reasonable search and failure to agree to move this case to Davidson County is further evidence of their continued bad faith. Sanctions should be levied.

---

[3] Since the Plaintiffs used the web to search the Secretary of State's website, it is clear that they had access to the internet and the knowledge to perform basic searches such as this.

### B. Plaintiffs and Plaintiffs' Counsel's Justification For Timing of Service Is Baseless

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Service of process then is something more than a mere technicality; it ensures a party's due process rights are not violated. Plaintiffs fail to understand this most basic concept in justifying the curious and highly suspect order of service in this case.

The key fact here is that the Defendants moved for default judgment against the NDP USA before it served all of the Defendants, including the TNDP Defendants. (Motion for Sanctions at 13.) Plaintiffs justify this behavior with nonsensical justifications that ignore the purpose of service.

First, Plaintiffs claim they tried to serve the TNDP Defendants in December by serving a summons identifying the NDP USA, not on the TNDP, but on the Arizona Democratic Party. (Opposition at 12.) That's right, Plaintiffs justify giving the TNDP Defendants notice by serving a summons that did not identify the TNDP on a wholly separate entity located on the other side of the country.

Next, Plaintiffs justify their conduct by citing a YouTube video posted in December. Apparently, Plaintiffs believe that to find out whether the TNDP Defendants are being sued it should scour the millions if not billions of videos posted on the internet. (Opposition at 13.)[4]

---

[4] Plaintiffs also cite some media coverage that Plaintiffs received upon filing the lawsuit as justification for its conduct. (Opposition at 14-15.) This is as equally absurd as the YouTube citation as potential defendants cannot possibly be expected to review every media outlet story to determine whether they are being sued. Such "notice" is in fact no notice at all and clearly violates the constitutional due process rights of every defendant.

255702                                    10

Finally, Plaintiffs justify their conduct by claiming that they served the DNC in the Washington DC office, but once again that summons identified the NDP USA, not the DNC or the TNDP as the entity being sued. (Opposition at 13.)

The TNDP Defendants hope the absurdity of this position is not lost on the Court and urge the Court to recognize this conduct for what it is: bad faith in the pursuit of this litigation justifying sanctions against the party operating in this manner.

### IV. Plaintiffs' Claims Are Frivolous

#### A. Plaintiffs Clearly Lack Standing

As the TNDP Defendants argued in the Motion for Sanctions and as all Defendants argued in their Rule 12(b)(1) and (b)(6) motion to dismiss (Dkt. No. 5-6), the Plaintiffs lack standing. Plaintiffs disagree and claim that "competitive standing" applies because Plaintiff Dummett has filed paperwork with the FEC to run for President. (Opposition at 18.) Interestingly and tellingly, Plaintiffs offer no justification for how Plaintiffs Maroney and Volodarsky satisfy Article III's standing requirements, presumably because there is no such justification. By naming them in this suit even though they knew them to lack standing, the Plaintiffs themselves violated Rule 11 and 28 U.S.C. § 1927 and sanctions are warranted on this basis alone.

Plaintiff Dummett's purported candidacy for President does not cure the standing defects of the other two individual Plaintiffs either. Plaintiffs incorrectly rely upon the "competitive standing" doctrine. (Opposition at 18.) As a threshold issue, the competitive standing doctrine has not been accepted by the Sixth Circuit. Nevertheless, even the circuit courts accepting the competitive standing doctrine have done so for plaintiffs that appear on the election ballot or on behalf of political parties representing candidates on the ballot. *See e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) (suit brought by Texas Democratic Party); *Schulz v.*

*Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (suit brought by political party representative that would appear on the New York ballot); *Fulani v. Hogsett*, 917 F.2d 1028 (7th Cir. 1990) (suit brought by candidate appearing on the ballot); *Owen v. Mulligan*, 640 F.2d 1130 (9th Cir. 1981) (suit brought by King County Republican Central Committee).

Here, Plaintiffs cite to no case where the competitive standing doctrine has been extended to a write-in candidate, unaffiliated with a major party or even a major third-party. In fact, write-in candidates are in no greater position than any other individual in the community as any and every person has the right to write-in a vote for himself. Therefore, Plaintiff Dummett, notwithstanding his quixotic write-in candidacy in the state of Tennessee, is in reality no better than the those of other individual citizens who have brought these identical claims against President Obama. *See e.g. Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011); *Kerchner*, 612 F.3d 204 (3d Cir. 2010); *Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009); *Hollister v. Soetero*, 258 F.R.D. 1 (D.D.C. 2009); *Wrotnowski v. Bysiewicz*, 289 Conn. 522 (Sup. Ct. Conn. 2008).

### B. Plaintiffs' Claims Are Clearly Preempted and Unsupported by Case Law

Plaintiffs incorporate by reference their arguments against the TNDP Defendants' claims of preemption and freedom to associate made in the motions to dismiss. Given that these issues are now well briefed before this Court, the TNDP Defendants will also incorporate by reference their counterarguments to Plaintiffs' position, to the extent necessary.

### C. President Obama Is Constitutionally Qualified To Hold the Office of President Of The United States

Finally, Plaintiffs close with a four-page argument for why the holding in the Supreme Court's decision in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898) should not be treated as binding precedent. The TNDP Defendants trust the Court will see the absurdity of this position and will only reiterate the fact that every tribunal actually reaching the merits of this dispute has

rejected it as baseless. (Motion for Sanctions at 9.) After all, President Obama is not the first President to have a foreign-born father, as Chester A. Arthur's father was born in Ireland. Notwithstanding this precedent and the facial absurdity of the position, Plaintiffs, and similar individuals, are nevertheless pursuing these baseless attacks against the sitting President of the Untied States in virtually every forum they can. It should stop, it must stop, but it won't until and unless parties bringing these suits are sanctioned for the conduct of filing meritless, poorly researched, and groundless lawsuits.

If the Court had any doubt remaining, after reading the above, as to the bad faith of the Plaintiffs here, the Court should examine closely the allegations in footnote 2 where Plaintiffs raised the suspicion that because of "the history of Congressional abuse of the Post Office," Defendant Wasserman Schultz committed a felony and conspired with the U.S. postal service to suppress the certified mail receipt from her served summons. For the Plaintiffs, it seems a conspiracy is lurking behind every corner and these imagined conspiracies form the basis of the complaint now before this court. Rule 11 and 28 U.S.C. § 1927 are meant to discourage the conduct Plaintiffs and Plaintiffs' counsel have shown here - the Court should not let them off the hook.

## CONCLUSION

The conduct described herein and the Motion for Sanctions warrants an appropriate sanction. An appropriate sanction would be awarding the Defendants their attorney's fees incurred as a result of filing this motion and the related motions to dismiss. The exact amount of these fees will be provided in subsequent briefing in the event the Court grants this motion.

Submitted this 18th day of June, 2012.

By: /s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (BPR #023045)
Benjamin A. Gastel (BPR# 028699)
BRANSTETTER, STRANCH
 & JENNINGS, PLLC
227 Second Avenue North, 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
Facsimile:  615/250-3932
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Counsel for the Tennessee Democratic Party and Chip Forrester*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via the Court's CM/ECF system, on June 18, 2012, upon:

Van Irion
Liberty Legal Foundation
9040 Executive Park Dr., Ste. 200
Knoxville, TN 37923

/s/   J. Gerard Stranch, IV
J. Gerard Stranch, IV

255702                                14