IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| LIBERTY LEGAL FOUNDATION, ) | |
| JOHN DUMMETT, ) | |
| LEONARD VOLODARSKY, and ) | |
| CREG MARONEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 12-2143-STA |
| ) | |
| NATIONAL DEMOCRATIC PARTY ) | |
| of the USA, Inc., DEMOCRATIC ) | |
| NATIONAL COMMITTEE, ) | |
| TENNESSEE DEMOCRATIC PARTY, ) | |
| DEBBIE WASSERMAN SCHULTZ, ) | |
| CHIP FORRESTER, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS**

Before the Court is Defendants Tennessee Democratic Party and Chip Forrester's Motion for Sanctions (D.E. # 25) filed on May 25, 2012. Plaintiffs Liberty Legal Foundation, John Dummett, Leonard Volodarsky, and Creg Maroney have filed a response in opposition.[1] For the reasons set forth below, the Motion is **GRANTED IN PART, DENIED IN PART**.

**BACKGROUND**

---

[1] Plaintiffs have filed a motion for leave to exceed the page limit by three pages (D.E. # 28). That motion is granted. Defendants have filed a motion for leave to file a reply brief (D.E. # 30). Because the Court finds that a reply is unnecessary to reach the issues presented, Defendant's motion is denied.

1

In their Amended Complaint, Plaintiffs alleged that Defendants "intend[ed] to send documents to the Tennessee Secretary of State announcing that [President Barack] Obama is [their] Presidential nominee for the 2012 general election and representing that he is qualified to hold the office of President." (Am. Compl. ¶ 8.) Plaintiffs further alleged that these representations were false because President Obama is not a "natural-born citizen," a requirement for holding the office of President of the United States under Article II of the United States Constitution. (*Id.* ¶¶ 9–19.) Based on these alleged misrepresentations to the Tennessee Secretary of State, Plaintiffs contended that Defendants were liable for negligent misrepresentation and fraud/intentional misrepresentation and that the Court should enjoin them from filing papers which would place President Obama's name on the ballot in Tennessee for the November 2012 general election.

On June 20, 2012, the Court granted Defendants' motion to dismiss, concluding that no Plaintiff had alleged sufficient facts in support of their standing to assert these claims. More specifically, the Court held that Plaintiffs had not alleged an injury-in-fact based on Defendant's alleged misrepresentations about President Obama's eligibility for office. All of the individual Plaintiffs claimed standing as concerned citizens or, in the case of Plaintiffs Dummett and Volodarsky, as declared candidates for President of the United States. The Court dismissed the contention that Plaintiffs had standing in their capacities as concerned citizens to bring claims against Defendants. The Court further concluded that Plaintiffs had failed to allege a concrete injury-in-fact as presidential candidates should President Obama's name appear on the ballot in Tennessee's November election. The Court rejected Plaintiffs' theory of competitive standing, that is, the notion that Plaintiffs Dummett and Volodarsky would suffer an injury-in-fact as President Obama's political rivals for votes in Tennessee's general election. The Court went to hold that in

the absence of any allegation that one of its members would have standing to bring these claims, Plaintiff Liberty Legal Foundation lacked associational standing to represent its members' interests in this suit. Therefore, the Court dismissed Plaintiffs' claims under Rule 12(b)(1).

In the Motion before the Court, Defendants now seek sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, or in the alternative, under 28 U.S.C. § 1927. Defendants argue that Plaintiffs have brought a frivolous suit without any legal or factual support for their claims. According to Defendants, Plaintiffs claims essentially contest the citizenship of President Obama, and courts around the country have rejected claims of this kind in eighteen previously-filed suits. Defendants assert that on March 11, 2012, they addressed a Rule 11 safe harbor letter to counsel for Plaintiffs demanding that Plaintiffs withdraw their Amended Complaint in this case. Defendants argue that had counsel for Plaintiffs conducted a proper investigation before filing suit, he would have discovered that his claims lacked any merit. Among other things, Defendants contend that Plaintiff should have known that no entity known as the National Democratic Party of the USA, Inc. is associated with any of the Defendants in this case. Thus, Plaintiffs had no colorable claim against this entity, and venue was not proper in this District. Defendants further argue that Plaintiffs should have known that a lawsuit is not the proper means to test President Obama's qualifications for office under Article II of the Constitution. Defendants also claim that the Tennessee party is the entity responsible for certifying the Democratic Party's nominee to the Tennessee Secretary of State, making Plaintiffs' claims against the DNC and its chair frivolous and unfounded. Above all, Plaintiffs should have known that under the circumstances they lacked standing to bring this suit. Based on Plaintiffs' failures to investigate the claims of the Amended Complaint prior to filing suit, Defendants seek an award of their attorney fees incurred as a result of filing the instant Motion as

well as their various Rule 12(b) motions.[2]

In their response in opposition, Plaintiffs maintain that the factual allegations and legal theories of the Amended Complaint have merit.[3]  Plaintiffs begin by challenging some of the factual contentions made in the Motion for Sanctions.  First, Plaintiffs counter that the DNC and its chair were properly named as parties based on the fact that in 2008 the DNC filed paperwork with the Tennessee Secretary of State's Office, certifying the party's candidate for President of the United States.  Second, Plaintiffs dispute Defendants' assertion that Plaintiff Dummett had not filed papers with the Secretary of State to have his name appear on the Tennessee general election ballot.  Plaintiffs' cite the certificate of write-in candidacy Dummett filed with the Secretary of State's Office, which Plaintiffs attempted to place on the record on May 18, 2012.  Third, Plaintiffs go to great lengths to explain the litigation involving Liberty Legal Foundation in a similar case in Arizona, specifically the manner in which Liberty Legal Foundation went about serving the defendants in that action.

With respect to the merits of Defendants' request for sanctions, Plaintiffs argue that Defendants failed to comply with Rule 11's requirement that the party seeking sanctions serve the actual Rule 11 motion on opposing counsel twenty-one (21) days prior to filing it with the Court.  Here Plaintiffs admit that Defendants sent counsel a safe harbor letter but maintain that Defendants did not serve the Rule 11 motion until the day it was filed.  Plaintiffs next defend their background

---

[2] Defendants state that should the Court grant their Motion for Sanctions, they will submit the exact amount of their fees in a separate filing.

[3] The Court would highlight that Plaintiffs filed their response in opposition to the Motion for Sanctions before the Court entered its order of dismissal.  As a result, Plaintiffs defend their claims, including their standing to assert the claims, with arguments the Court has now rejected in its order of dismissal.

investigation and other efforts made to ascertain the facts alleged in their pleadings. Plaintiffs also defend their attempts to achieve proper service of process on all Defendants and deny that Plaintiffs attempted to hide the suit from the DNC. Finally, Plaintiffs argue their case is distinguishable from other cases challenging President Obama's status as a natural born citizen, particularly in so far as Plaintiffs Dummett and Volodarsky have competitve standing to bring their claims. Plaintiffs request in conclusion that the Court award Plaintiffs' their reasonable attorneys fees "incurred in responding to Defendants (sic) unfounded motion."[4]

## ANALYSIS

### I. Sanctions Under Rule 11

Defendants first seek sanctions against Plaintiffs under Rule 11. The Court holds, however, that Defendants have failed to comply with Rule 11's prerequisites for filing a motion for sanctions. As such, Defendants' request pursuant to Rule 11 must be denied. Rule 11(b) of the Federal Rules of Civil Procedure governs representations made to the Court and establishes that when an attorney files a pleading, motion or the like, the attorney certifies to the Court that

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.[5]

---

[4] Pls.' Resp. in Opp'n 22 (D.E. # 29).

[5] Fed. R. Civ. P. 11(b).

Rule 11(c) provides a "safe harbor" which requires a party seeking sanctions for violations of Rule 11 to make a separate motion and "describe the specific conduct alleged to violate subdivision (b)."[6] Importantly, the safe harbor further requires the moving party to serve its motion for sanctions on the opposing party twenty-one (21) days before actually filing or presenting the motion to the court.[7] The ostensible purpose of the safe harbor period is to allow the opposing party a respite in which to cure the alleged violation of Rule 11(b).[8]  The comments to Rule 11 addressing the safe harbor requirement state in part, "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period *begins to run only upon service of the motion*."[9]  The comments go on to advise that counsel should also "give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion."[10]

The Sixth Circuit has held that Rule 11 and the safe harbor procedure contemplate a two step process: (1) to serve the Rule 11 motion on the opposing party for a period of at least twenty-one (21) days; and then (2) file the motion with the court.[11]  The Court in *Ridder* concluded that "[b]y filing a motion for sanctions without previously having *served the motion on the opposing party* for the designated period . . ., Springfield failed to afford Ridder's counsel the twenty-one day 'safe

---

[6] Fed. R. Civ. P. 11(c).

[7] *Id.*

[8] Fed. R. Civ. P. 11(c)(1)(A) (emphasis added).

[9] Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (emphasis added).

[10] *Id.*

[11] *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997).

harbor' period mandated by [Rule 11]."[12]  In the case at bar, it is undisputed that Defendants did not serve counsel for Plaintiffs with their Motion for Sanctions at least twenty-one (21) days before filing the Motion with the Court.  Rather, Defendants addressed a safe harbor letter to counsel alerting him to their intention to file the Motion and outlining the grounds for the Motion.  Even the comments to Rule 11 suggest that a "safe harbor" letter constitutes only "informal notice."[13]  The fact remains that Defendants did not serve the actual Motion on counsel for Plaintiffs until the Motion was filed.  It has been held that sending a safe harbor letter without including the Rule 11 motion itself does not satisfy the safe harbor requirements of Rule 11(c).[14]  Therefore, the Court concludes that Defendants failed to comply with Rule 11(c)'s procedure for seeking sanctions.  Accordingly, Defendants' Motion for Sanctions pursuant to Rule 11 is **DENIED**.[15]

## II. Counsel's Liability Under 28 U.S.C. § 1927

In the alternative, Defendants seek to hold counsel for Plaintiff liable pursuant to 28 U.S.C. §1927 and recover their reasonable attorney fees for the separate Rule 12 motions filed by Defendants.  The statute provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

---

[12] *Id.* at 297.

[13] Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).

[14] *Williams v. White Castle Sys., Inc.*, 526 F. Supp. 2d 830, 838-40 (M.D. Tenn. 2007). *See also Salkil v. Mount Sterling Twp. Police Dept.*, 458 F.3d 520, 526 n.1 (6th Cir. 2006) (stating in dicta, "This opinion does not indorse the use of a letter in place of the requisite safe-harbor 'motion' required by Rule 11 or the Village's incorporation of its motion for judgment on the pleadings into its safe-harbor letter").

[15] *Ridder*, 109 F.3d at 297.

7

expenses, and attorneys' fees reasonably incurred because of such conduct."[16] A § 1927 sanction against an attorney may be appropriate even in the absence of any "conscious impropriety."[17] The Sixth Circuit has framed the inquiry as not whether an attorney acted in bad faith but whether "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims."[18] In short, the sanction requires "a showing of something less than subjective bad faith, but something more than negligence or incompetence."[19]

The Court holds that Defendants have shown that counsel for Plaintiff knew or reasonably should have known that the claims in this case had no basis in law. Specifically, counsel for Plaintiffs reasonably should have known that Plaintiffs lacked standing to pursue their claims related to Defendants' efforts to certify President Obama as the Democratic Party's nominee for the Tennessee general election. First, the Court finds that the allegations of standing made on behalf of Plaintiff Maroney are particularly frivolous and without merit. When confronted with the standing issue in Defendants' motion to dismiss, Plaintiffs' brief failed to attempt to show that Maroney had standing much less cite legal authority to support such a position. The Court was left to presume based on the allegations of the Amended Complaint that Maroney brought suit in his capacity as a concerned citizen and tax payer. As the Court held in its order of dismissal, Maroney's was an

---

[16] 28 U.S.C. § 1927.

[17] *Hall v. Liberty Life Assur. Co. of Boston*, 595 F.3d 270, 275 (6th Cir. 2010) (citation omitted).

[18] *Id.* at 275-76 (citation omitted).

[19] *Id.* at 276 (citation omitted).

"undifferentiated, generalized grievance" that could not possibly establish standing to bring such claims. What is more, counsel for Plaintiffs should have realized as much before he ever framed pleadings and brought suit on behalf of Maroney. On this basis alone, counsel's conduct lacked any reasonable justification.

Second, the Court further finds that the allegations of standing made on behalf of Dummett and Volodarsky were almost equally without merit. Although the Amended Complaint alleged both of these Plaintiffs were declared candidates for President of the United States, Plaintiffs failed to address Volodarsky's standing at all in their briefing. Plaintiffs did argue that Dummett (but not Volodarsky) had competitive standing to bring his claims, meaning that as a candidate, Dummett could challenge the qualifications of a competing candidate.[20] As the Court has already concluded, however, the Amended Complaint completely failed to allege any plausible facts showing that Dummett would ever appear on a ballot with President Obama or otherwise compete for votes directly with the Democratic incumbent.[21] Unlike the political candidates in *Drake v. Obama*, Plaintiff Dummett did not allege that he was the nominee of any political party or that his name

---

[20] Plaintiffs' briefing on the motion to dismiss did not actually address Volodarsky's candidacy or his competitive standing to bring suit. The Court, nevertheless, accepted as true the fact that Volodarsky was a presidential candidate for purposes of the Rule 12(b)(1) motion. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004) (holding that where there is a facial challenge to standing, the Court must consider all of the allegations in the complaint as true). Were it to be shown that Volodarsky was not a candidate for President, then his standing like Maroney's could only be based on his status as a concerned citizen or a tax payer.

[21] Order Granting Defs.' Mot. to Dismiss 14, June 21, 2012 (D.E. # 31) (noting that Dummett had failed to plead that he was a Tennessee political party's nominee for the office, that his name would appear on the ballot for Tennessee's general election in November, that he was campaigning in the state of Tennessee, that any registered voter in Tennessee intended to cast a vote for him, or that President Obama's presence on the ballot would in any way injure his campaign).

9

would appear on the Tennessee general election ballot. At best, Dummett attempted to show that he had registered with the Tennessee Secretary of State as a write-in candidate.[22] Plaintiffs have cited, and the Court is aware of, no legal authority standing for the proposition that a write-in candidate who was not a political party's nominee for office could have competitive standing to challenge a rival's qualifications. On the contrary, the Court noted in its order of dismissal that "[t]he allegation that an individual from California who is a merely declared write-in candidate in Tennessee is, without additional factual support, too speculative to show injury-in-fact."[23] Under the circumstances, the Court holds that counsel for Plaintiff should have known that Dummett and Volodarsky had no standing to assert their claims in this case.

Finally, counsel for Plaintiffs should have reasonably concluded that Liberty Legal Foundation lacked standing to assert any claims in this case. Liberty Legal Foundation asserted associational standing based on the fact that its members, the individual Plaintiffs named in this suit, had standing. For the reasons already discussed, the Court has determined that the standing claims of the individual Plaintiffs were frivolous and wholly without merit in this case. It follows that the associational standing claim made by Liberty Legal Foundation was equally unsupportable.

Having determined that counsel for Plaintiff reasonably should have known that all Plaintiffs

---

[22] Dummett's evidence showing that he intended to run as a write-in candidate was never actually properly before the Court. The Court denied Plaintiffs leave to file a "supplemental response," i.e. a sur-reply, in briefing the motion to dismiss. Order Granting Defs.' Mot. to Dismiss 8-10. Plaintiffs had attached as an exhibit to their "supplemental response" what purported to be a certificate of write-in candidacy filed by Dummett on May 15, 2012, almost seven months after Plaintiffs had filed their original complaint. *See* Pls.' Mot. for Leave to File Supp. Resp., ex. 2 (D.E. # 24). For a variety of reasons, the Court concluded that it would be improper to permit Plaintiffs to file the "supplemental response" and its supporting exhibits.

[23] Order Granting Defs.' Mot. to Dismiss 15 n.41 (citing *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 656–57 (6th Cir. 2007)).

lacked standing to bring this suit, the Court holds that Plaintiffs' claims were frivolous and without any arguable basis in law. As such, counsel for Plaintiff has multiplied the proceedings in this case unreasonably and vexatiously and should therefore be required to satisfy personally the attorneys' fees reasonably incurred by Defendants because of such conduct. Defendants' Motion is **GRANTED** as to this issue.

Defendants' Motion for Sanctions seeks reasonable attorney fees incurred for all three of the Rule 12(b) motions Defendants filed in this case on March 1, 2012. Specifically, all Defendants filed the motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), raising among other things the issue of standing (D.E. # 4). The Court has granted this motion and accordingly dismissed all of Plaintiffs' claims against Defendants. Nevertheless, Defendants Democratic National Committee and Debbie Wasserman Schultz also filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) (D.E. #6), and Defendant Chip Forrester filed a motion to dismiss for improper venue under Rule 12(b)(3) (D.E. # 8). The Court did not reach the issues presented in these other motions to dismiss because the Court held that as a threshold matter, Plaintiffs lacked standing. Now Defendants have raised some of the same issues in support of their request for sanctions, which were previously raised in the Rule 12(b) motions the Court did not take up. For example, Defendants continue to argue that Plaintiffs named an improper defendant, the National Democratic Party of the USA, Inc., for the sole purpose of establishing venue in this District.[24] Furthermore, Defendants contend that Plaintiffs had no colorable claims against Chip Forrester, the

---

[24] Defendant Forrester raised this argument in support of his motion to dismiss for improper venue. *See* Def.'s Mot. to Dismiss Improper Venue 5 (D.E. # 9) ("The NDC USA, however, is the only defendant residing in this district and therefore venue is not proper here based on where the Defendant resides.").

DNC, or Debbie Wasserman Schultz and named them as parties simply for the purpose of harassment.[25]

While the Court recognizes the seriousness of these claims, the Court declines the parties' invitation to consider them in assessing the need for sanctions under § 1927. Just as the Court found it unnecessary to the decide these issues in dismissing the case, the Court finds it unnecessary to delve into these questions for the purpose of imposing sanctions. The Court must emphasize that it takes no position on the relative merits of the parties' positions on these matters. The Court simply concludes that conducting a close analysis of legal and factual issues, which were not actually dispositive in this case, would be a waste of judicial resources. Therefore, the Court finds good cause to limit the sanction against counsel for Plaintiff to only those attorney fees incurred as a result of preparing and briefing Defendants' motion to dismiss on the standing issue (D.E. # 4). Insofar as Defendants seek attorney fees incurred for the other motions to dismiss, the request for sanctions is **DENIED**.

## CONCLUSION

The Court holds that Defendants failed to comply with the formal requirements of Rule 11's safe harbor provision. As such, Defendants are not entitled to sanctions pursuant to Rule 11. The Court does conclude that an award of attorney fees pursuant to 28 U.S.C. § 1927 is appropriate. Defendants have shown that counsel for Plaintiff reasonably should have known his legal claims of

---

[25] Defendants DNC and Wasserman Schultz raised this argument in support of their motion to dismiss for lack of personal jurisdiction. *See* Def.'s Mot. to Dismiss for Lack of Personal Jurisd. 3 (D.E. # 9) ("In short, a review of the Amended Complaint reveals that there are simply no facts alleged by the Plaintiffs in this case which support a conclusion that the DNC and Wasserman Schultz had 'fair warning' that their conduct toward the Plaintiffs might subject them to the jurisdiction of a Tennessee court as is required by the Due Process Clause.").

standing on behalf of all Plaintiffs lacked merit and were frivolous. Therefore, Defendants are granted sanctions in the form of reasonable attorney fees related to the preparation and briefing of the motion to dismiss in which they raised the issue of standing. Defendants' request for sanctions related to other Rule 12(b) motions the Court never reached are denied.

Defendants' Motion for Sanctions states that Defendants will submit a fee petition for the Court's review in the event the Court grants the Motion. Defendants are ordered to submit their detailed petition for reasonable attorney fees as well as a supporting affidavit and any other exhibits within twenty-one (21) days of the entry of this Order. Counsel for Plaintiff shall have twenty-one (21) days thereafter to file objections to any claimed fees or other costs set forth in the petition. Therefore, Defendants' Motion for Sanctions is **GRANTED IN PART, DENIED IN PART**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 24, 2012.