**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **LIBERTY LEGAL FOUNDATION,** | ) | |
| **JOHN DUMMETT,** | ) | |
| **LEONARD VOLODARSKY, and** | ) | |
| **CREG MARONEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 12-2143-STA** |
| | ) | |
| **DEMOCRATIC NATIONAL** | ) | |
| **COMMITTEE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING IN PART DEFENDANTS' PETITION FOR REASONABLE
ATTORNEYS FEES**

Before the Court is Defendants Tennessee Democratic Party and Chip Forrester's Petition

for Reasonable Attorneys Fees (D.E. # 37) filed on September 14, 2012.  Plaintiffs Liberty Legal

Foundation, John Dummett, Leonard Volodarsky, and Creg Maroney have filed a response in

opposition, and Defendants have filed a reply brief.  For the reasons set forth below, Defendants'

Petition is **GRANTED IN PART**.

## BACKGROUND

Plaintiffs' Amended Complaint alleged that Defendants "intend[] to send documents to the

Tennessee Secretary of State announcing that [President Barack] Obama is [their] Presidential

nominee for the 2012 general election and representing that he is qualified to hold the office of

President."  (Am. Compl. ¶ 8.)  Plaintiffs further alleged that these representations were false

1

because President Obama is not a "natural-born citizen," a requirement for holding the office of President of the United States under Article II of the United States Constitution. (*Id.* ¶¶ 9–19.) Based on these alleged misrepresentations to the Tennessee Secretary of State, Plaintiffs contended that Defendants were liable for negligent misrepresentation and fraud/intentional misrepresentation and that the Court should enjoin them from filing papers which would have placed President Obama's name on the ballot in Tennessee for the November 2012 general election.

On June 20, 2012, the Court granted Defendants' motion to dismiss, concluding that no Plaintiff had alleged sufficient facts in support of their standing to assert these claims. More specifically, the Court held that Plaintiffs had not alleged an injury-in-fact based on Defendant's alleged misrepresentations about President Obama's eligibility for office. On May 25, 2012, Defendants filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, or in the alternative, under 28 U.S.C. § 1927. Defendants sought to recover their reasonable attorneys fees associated with the filing of their motions to dismiss, including their Rule 12(b)(1) motion to dismiss for lack of standing. In its August 24, 2012 order, the Court granted Defendants' motion but only in part. The Court concluded that Defendants were entitled to reasonable attorneys fees only for their motion to dismiss for lack of standing and only pursuant to § 1927.[1] The Court then directed Defendants to submit a fee petition in support of their request.

In their Petition for Reasonable Attorneys Fees, Defendants argue that $22,800 is the

---

[1] The Court denied Defendants' request for sanctions as to two other motions to dismiss, one asserting that venue was improper in this District (D.E. # 9) and one arguing that the Court lacked personal jurisdiction over certain Defendants (D.E. # 6). Order Granting in Part, Denying in Part Defs.' Mot. for Sanctions 11-12, Aug. 24, 2012 (D.E. # 32). Because the Court dismissed the case for lack of standing, the Court never reached the merits of these other motions. As a result, the Court declined to award Defendants their attorneys fees for preparing these other Rule 12(b) motions.

reasonable lodestar fee for work related to their motion to dismiss for lack of standing and their motion for sanctions.  According to Defendants, three different attorneys devoted a total of 61.3 hours to the preparation of these motions at billable rates between $300 per hour and $700 per hour.

With respect to time, counsel seeks fees related to work on the motion to dismiss for lack of standing as well as the sanctions motion.  Counsel has included only time for any daily timesheet entry that referred to "motions to dismiss" or "motion for sanctions."  The documentation submitted by counsel consists of a daily narrative, explaining all of the various activities counsel pursued in the case on a given day, not just the time worked on the motion to dismiss or the motion for sanctions.  For example, counsel's declaration states that on March 1, 2012, the date Defendants filed their three Rule 12(b) motions, counsel performed the following tasks related to this case: "Draft and edit motions to dismiss; confer with clients regarding the same; confer with counsel regarding the same; research regarding proper venue in federal court; confer with counsel regarding Rule 11 letter; finalize Rule 11 letter; research judge assigned to case; confer with counsel regarding the same."[2]  Counsel's declaration shows that he worked a total of 8.2 hours that day on all of the activities listed in his time entry.  Counsel admits, however, that he "cannot say with absolute certainty the exact amount of time he expended strictly in performing work associated with the Rule 12(b)(1) Motion to Dismiss" addressed to the standing issue.[3]

As such, counsel has estimated that on any day in which his time records show he worked on the motions to dismiss, counsel allocated two-thirds of his daily time to the Rule 12(b)(1) motion arguing the standing issue.  Furthermore, counsel has estimated that on any day in which his time

---

[2] Defs.' Reply, ex. A, Gastel Decl. (D.E. # 44-2).

[3] Defs.' Pet. for Reasonable Atty. Fee, 3 (D.E. # 37).

records show he worked on the motion for sanctions, counsel worked two-thirds of his time on the "portions of Sanctions Motion which the Court granted."[4]  Applying this formula to the time entry for March 1, 2012, counsel estimates that of the 8.2 hours he worked on the case, 4.9 hours were spent on the motion to dismiss for lack of standing as well as the preparation of the Rule 11 motion for sanctions.  All of counsel's time entries follow the same pattern, listing his total time spent on all work for the case on a specific date followed by an estimate of how much of the total time was actually spent on the motion to dismiss for lack of standing and the motion for sanctions. Defendants contend that the total amount of time is reasonable based on the "plethora of cases raising the exact same issues raised by Plaintiffs' complaint, namely the issue of whether President Barack Obama satisfies Article II's requirements to hold the office of President of the United States."[5]  Furthermore, it is reasonable for counsel to estimate that two-thirds of his time spent on the "motions to dismiss" was actually devoted to the Rule 12(b)(1) motion.  The memorandum in support of that motion was nineteen pages in length; whereas, the combined length of the two other motions to dismiss only thirteen pages.  Therefore, Defendants argue that the Court should find counsel's time estimate to be reasonable.

Concerning the hourly rates, Defendants state that Benjamin Gastel is a senior associate at Branstetter, Stranch, and Jennings, PLLC, and bills his time at $300 per hour.  Mr. Gastel has engaged in the practice of law since 2007 and has approximately five years of experience in complex and general litigation.  Mr. Gerard Stranch is the senior partner at Branstetter, Stranch, and Jennings, PLLC, and bills his time at $600 per hour.  Mr. Stranch is in charge of the firm's class action,

---

[4] *Id.* at 4.

[5] *Id.* at 9.

complex litigation and mass tort practice group and is currently general counsel to the Tennessee Democratic Party.  Mr. Stranch has practiced law since 2003 and has extensive experience in the areas of complex and general litigation and election law.  Mr. Stranch is an adjunct professor at Vanderbilt School of Law and has been recognized by his peers as an expert in class action practice. Mr. James Stranch is a senior partner at Branstetter, Stranch, and Jennings, PLLC and bills at $700 per hour.  Mr. Stranch has significant experience in the areas of complex and civil litigation and has practiced law since 1973.

In further support of their hourly rates, counsel has submitted the affidavit of Charles Baum, Ph.D., professor of economics and finance at Middle Tennessee State University.  Dr. Baum reports that counsel's rates are consistent with the prevailing rates of attorneys with similar expertise and experience in the geographical area applicable to this case.  Additionally, counsel has submitted the affidavit of attorney Jef Fiebelman, a partner at Burch, Porter & Johnson, PLLC in Memphis, Tennessee.  Mr. Fiebelman has opined that the hourly rates counsel seeks are reasonable and consistent with the market for similar legal services in this District.  Based on this record, Defendants request a total fee award of $22,800.

Plaintiffs have responded with objections to Defendants' Petition.  First, Plaintiffs argue that the Court's order on sanctions did not grant fees for the preparation of the motion for sanctions, only for the motion to dismiss for lack of standing.  Counsel's petition includes 9.8 "sanctionable hours" of work performed by all attorneys on the sanctions motion.  Thus, the Court should exclude any time where Defendants seek fees for their motion for sanctions.  Second, Plaintiffs argue that Defendant's request for fees based on 34.9 hours of work related to the Rule 12(b)(1) motion to

dismiss is "utterly unreasonable."[6]  Plaintiffs attack Defendants' method of estimating time spent on

the Rule 12(b)(1) motion based on a ratio of the number of pages in the Rule 12(b)(1) motion

compared to the number of pages in all of the Rule 12(b) motion papers.  Plaintiffs contend that even

if the Court used a page ratio to estimate counsel's reasonable time, forty-five percent (45%), and

not two-thirds, of each attorney's time is a more accurate multiplier.[7]  Third and finally, Plaintiffs

oppose the hourly rates each attorney has requested.  Plaintiffs argue that Dr. Baum's report actually

undermines Mr. Gerard Stranch's request for fees at $600 per hour.  Dr. Baum opined that a

reasonable hourly rate for an attorney with Mr. Stranch's experience would be $491.53 per hour.

More generally, Plaintiff object that Dr. Baum's report is based on average hourly rates from his

national survey, not the prevailing market rate for the venue of the Court.  Plaintiffs state, "At best

the Baum declaration reflects results generalized for the state of Kentucky, Tennessee, Mississippi,

and Alabama, as a whole."[8]  Dr. Baum also mentions only regional variables derived from the

Census Bureau but fails to explain how he applied those variables to the data.  As a result, Plaintiffs

argue that they are unable to verify Dr. Baum's conclusions.  Plaintiffs assert then that counsel for

Defendants have shown an entitlement to no more than $8,290.49 in fees, based on a total of 16.5

hours reasonably expended on the Rule 12(b)(1) motion at hourly rates of $300, $700, and $491.53,

---

[6] Pls.' Objs. to Fee Pet. 4 (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

[7] Plaintiffs next object that Mr. Gastel's declaration did not document the full 48 hours of work he claims.  *Id.* at 6.  However, Defendants' reply has cured this omission.  Defendants state that one page of Mr. Gastel's declaration was inadvertently left out of their opening brief.  Mr. Gastel has filed the corrected declaration as an exhibit to Defendants' reply brief (D.E. # 44-2).  Therefore, the Court now has a complete record, and Plaintiffs' objection on this issue is resolved.

[8] Pls.' Objs. to Fee Pet. 8.

6

respectively.

In their reply Defendants argue that an award of fees for the preparation of the motion for sanctions is appropriate under § 1927.  In the event the Court disagrees and excludes this time from its award of fees, Defendants assert that only $5,800 of the $22,800 in fees sought are related to the motion for sanctions.  Defendants next defend the reasonableness of counsel's time estimates for work on the motion to dismiss, particularly time spent on specific dates researching and briefing the standing issue.  As for the reasonableness of counsel's hourly rates, Defendants argue that Plaintiffs have presented no evidence rebutting the declarations of Dr. Baum or Mr. Fiebelman.  Furthermore, Plaintiffs have only challenged the reasonableness of the hourly rate charged by Mr. Gerard Stranch. Defendants respond that Mr. Stranch's hourly rate of $600 falls within the range of rates, $378.54 to $659.13, which Dr. Baum opined would be consistent with 66% of attorneys with similar experience in this area.  Defendants contend that Mr. Stranch can bill at the upper end of this range because he heads the firm's complex litigation practice group, has received recognition for his class action practice, and is an adjunct professor at Vanderbilt Law.  Defendants also point out that in a previous class action litigated in this District, Judge Mays approved fees for Mr. Stranch at $500 per hour in 2008.  Defendants argue then that Mr. Stranch's hourly rate of $600 is reasonable.  Finally, Defendants assert that Dr. Baum's use of national hourly rates to calculate reasonable rates for this venue is proper because Plaintiffs brought suit on behalf of a nationwide class.  For these reasons, Defendants believe they have established the reasonableness of counsel's time and hourly rates.

## ANALYSIS

"The primary concern in an attorney fee case is that the fee awarded be reasonable."[9]  A reasonable fee is "adequately compensatory to attract competent counsel" and yet "avoids producing a windfall for lawyers."[10]  Generally, the amount of attorneys fees is determined by the "lodestar" method, in which fees are "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."[11]  The party seeking attorney's fees has the burden of showing the number of hours expended and the hourly rates claimed.[12]  The documentation in support of an award of attorney fees must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."[13]  The party opposing the award of fees must "raise objections with specificity, pointing out particular items, rather than making generalized objections to the reasonableness of the bill as a whole."[14]  While the Court enjoys "substantial" discretion in

---

[9] *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson,* 465 U.S. 886, 893 (1984)).

[10] *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).

[11] *Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989) (quoting *Blum*, 465 U.S. at 888); *see also Venegas v. Mitchell,* 495 U.S. 82, 87 (1990); *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).

[12] *Hensley,* 461 U.S. at 433.

[13] *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)).

[14] *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 n.14 (6th Cir. 1990).

determining the reasonable attorney fee award,[15] the Court must provide "a clear and concise explanation of its reasons for the fee award."[16]

## A.  Request for Fees Related to the Motion for Sanctions

As an initial matter, Defendants have requested attorneys fees related to the motion for sanctions itself in addition to their attorneys fees for the Rule 12(b)(1) motion.[17] In its previous order on sanctions, the Court only "granted sanctions in the form of reasonable attorney fees related to the preparation and briefing of the motion to dismiss in which [Defendants] raised the issue of standing."[18] Obviously, the Court did not address Defendants' request for fees incurred for preparing the motion for sanctions.  Counsel for Defendants have now produced with their Fee Petition declarations to establish the time counsel spent on Defendants' "Rule 11 motion" and the "motion for sanctions."  According to counsel, Defendants seek $5,800 in fees "for drafting the portion of the sanctions motion which this Court granted."[19]  A prevailing party is entitled to recover its legal fees for time spent preparing a request for fees pursuant to a fee-shifting statute such as § 1927.[20]

---

[15] *Gonter*, 510 F.3d at 616.

[16] *Hensley*, 461 U.S. at 438.

[17] *See* Defs.' Mot. for Sanctions 17, May 25, 2012 (D.E. # 25) ("An appropriate sanction would be awarding the Defendants their attorney's fees incurred as a result of filing this motion and the related motions to dismiss.").

[18] Order Granting in Part, Denying in Part Defs.' Mot. for Sanctions 13.

[19] Defs.' Pet. for Reasonable Atty. Fee 2 n.1.

[20] *Auto Alliance Intern., Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 229 (6th Cir. 2005) (citing *Weisenberger v. Heucker*, 593 F.2d 49, 53-54 (6th Cir. 1979)); *see also Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir. 1986) (setting out general principles for the "131 attorney fee shifting statutes" existing under federal law, including § 1927).

9

However, the Sixth Circuit has limited the recovery of so-called "fees for fees" to three percent of the hours awarded if the case is decided without a trial.[21]   Therefore, Defendants' request for fees related to bringing its motion for sanctions is **GRANTED**.  However, the Court will limit the award to 3% of the value of the fees to be awarded pursuant to § 1927.  The Court will set Defendants' "fees for fees" award once the Court has determined the reasonable amount of fees to which Defendants are entitled under § 1927.

## B. Reasonableness of the Hours Expended

Before the Court can arrive at a lodestar calculation, the Court must first consider how many hours counsel reasonably expended on the Rule 12(b)(1) motion to dismiss.  The Court must exclude from its calculation hours that are "excessive, redundant, or otherwise unnecessary."[22]  For example, the Court may reduce hours for unnecessary duplication or when too many hours are spent performing specific tasks.[23]  Although counsel's records must provide "sufficient detail and probative value" to assist the Court in its determination, attorneys need not "record in great detail how each minute of time was expended but should identify the general subject matter of time expenditures."[24]

Applying these principles to the case at bar, counsel for Defendants have presented evidence

---

[21] *Gonter*, 510 F.3d at 620; *Auto Alliance Intern.*, 155 F. App'x at 229; *Coulter*, 805 F.2d at 151.

[22] *Hensley*, 461 U.S. at 434; *Northcross v. Bd. of Educ. of Memphis City Sch.,* 611 F.2d 624, 646 (6th Cir. 1979).

[23] *Coulter*, 805 F.2d at 151-52.

[24] *U.S. ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 148-49 (6th Cir. 2010) (quoting *Hensley*, 461 U.S. at 437 n.12); *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005).

that they spent a total of 61.3 hours working on the Rule 12(b)(1) motion on standing and the motion for sanctions.  For the reasons already explained, the Court must cap the award of fees related to the motion for sanctions at 3% of the value of the award of fees related to the motion to dismiss.  The Court has carefully reviewed the parties' submissions and all of the evidence adduced in support of the fee request.  After subtracting out all time entries for work on the motion for sanctions, the Court finds that counsel has documented 40.5 hours of work on the Rule 12(b)(1) motion.  More specifically, Mr. James Stranch has shown that his work on the motion to dismiss totaled 2 hours, and Mr. Gerard Stranch has documented 8.3 hours of work on the motion to dismiss.  The Court finds that these 10.3 hours are reasonable and not excessive or duplicative for the type of tasks counsel performed on the motion to dismiss.  Therefore, Defendants have established that Mr. James Stranch and Mr. Gerard Stranch reasonably worked 10.3 hours on the motion to dismiss.

The Court further finds that Defendants have established the reasonable time Mr. Gastel worked on the motion to dismiss, though the Court's analysis of Mr. Gastel's time is somewhat more complicated.  At first glance Mr. Gastel's declaration supports a finding that he worked approximately 30.2 hours on the motion to dismiss.  The Court finds that Mr. Gastel's time was reasonable for all of the following days on which he performed work on the motion to dismiss: February 24, 2012 (4.2 hours); February 27, 2012 (4.1 hours); February 28, 2012 (3.8 hours); February 29, 2012 (1.9 hours); May 4, 2012 (0.9 hours); May 10, 2012 (3.0 hours); and May 11, 2012 (2.8 hours).  However, Mr. Gastel estimates in his time entries for February 23, 2012, and March 1, 2012, that he worked on the motion for sanctions as well as the motion to dismiss.  For example, Mr. Gastel estimates that on February 23, he worked a total of 7.6 hours on the case, of which 4.6 hours were devoted to both the motion to dismiss and the motion for sanctions.  Thus, Mr.

11

Gastel has combined his estimated time for the Rule 12(b)(1) motion and the sanctions motion and not estimated what amount of time he spent strictly on the motion to dismiss. The Court recognizes that Mr. Gastel did not know at the time he made his time entries that the Court would award attorneys fees only for specific work counsel performed in this case or what that work would be.

While the Court cannot make a precise finding about how many hours Mr. Gastel worked on the motion to dismiss on these dates, Mr. Gastel has clearly shown that he performed some work on the motion on February 23 and March 1. With respect to the February 23 time entry, Mr. Gastel states that he performed "research regarding motion to dismiss."[25] In light of the many other tasks listed by Mr. Gastel for this date such as preparing and filing a notice of removal as well as drafting a Rule 11 letter, the Court finds that Mr. Gastel reasonably expended no more than one hour on his research. With respect to March 1, Mr. Gastel has shown that his work consisted in part of "draft and edit motions to dismiss; confer with clients regarding same; confer with counsel regarding same."[26] The Court notes that Mr. Gerard Stranch's time entry for the same date shows that he worked 3.2 hours to "review, revise and finalize briefs"[27] and that Defendants filed all three of their Rule 12(b) motions that day. These facts suggest that Mr. Gastel was merely finalizing his part of the work on the motions on March 1. Under the circumstances the Court finds that Mr. Gastel reasonably expended no more than one hour on the motion to dismiss on March 1. By reducing Mr. Gastel's compensable time on these two dates, the Court finds that Mr. Gastel reasonably expended a total of 22.7 hours litigating the motion to dismiss. Therefore, Defendants have established the

---

[25] Defs.' Reply, ex. A, Gastel Decl.

[26] *Id.*

[27] Defs.' Pet. for Reasonable Atty. Fee, ex. A, G. Stranch Decl. (D.E. # 37-2).

reasonable time Mr. Gastel worked on the motion to dismiss as 22.7 hours.

Plaintiffs calculate that counsel for Defendants spent 34.9 hours on the motion to dismiss and argue that a request for fees based on this much time is "utterly unreasonable." In other words, Plaintiffs argue that any amount of time beyond some threshold is *ipso facto* unreasonable. Plaintiffs further contest counsel's method of using page ratios from Defendants' brief to arrive at the amount of the time spent on the Rule 12(b)(1) motion and the standing issue. The Court would simply stress that its determination about the reasonableness of counsel's time is not based on a fixed, a la carte schedule of certain time increments for certain legal services. Nor is the Court's finding derived from a simplistic ratio of Defendants' successful arguments versus unsuccessful arguments. Rather, the Court's analysis is based on its own experience and judgment about the time and professional skill required to analyze the issues presented, research the relevant authority, and frame arguments to present the standing issue. Applying this experience and judgment to the evidence counsel has presented, the Court finds that counsel's time is reasonable under the circumstances. Therefore, the Court is not persuaded by Plaintiffs' arguments on this point.

Based on counsel's time entries, declarations, and the entire record of this matter, the Court finds that Mr. James Stranch reasonably devoted 2.0 hours to the Rule 12(b)(1) motion to dismiss for lack of standing, Mr. Gerard Stranch reasonably devoted 8.3 hours to the motion, and Mr. Gastel reasonably devoted 22.7 hours to the motion. Having arrived at the reasonable number of hours expended by each attorney on the motion to dismiss, the Court must next determine the reasonable hourly rate for counsel's services.

## C. Reasonableness of the Hourly Rates

The Court bases its assessment of whether counsel's requested hourly rates are reasonable

13

on "[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[28]  As the Sixth Circuit observed in 1986, "a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."[29]  The Court may determine a reasonable hourly rate by drawing on the parties' evidence, fee awards in analogous cases, state bar association guidelines, and the Court's own knowledge and experience in handling similar fee requests.[30]

As their affidavits attest, counsel for Defendants are experienced and accomplished attorneys, all with significant practices in complex, class action litigation.  Mr. James Stranch is a senior partner in his firm with nearly forty years of experience as a Tennessee attorney.  Mr Gerard Stranch is likewise a senior partner in the firm and heads the firm's class action, complex litigation, and mass tort practice group.  Mr. Stranch has been in practice for nine years and serves as an adjunct professor at Vanderbilt.  Mr. Gastel  is a senior associate at the firm with five years experience in complex and general litigation.  Each attorney has averred that his hourly rate in this case is consistent with the market rates charged in Nashville and Memphis for legal work "in complex, class

---

[28] *Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum*, 465 U.S. at 896 n.11); *see also Geier*, 372 F.3d at 791 ("To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.").

[29] *Coulter*, 805 F.2d at 149.

[30] *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011) (citing *B & G Mining, Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008) (other citation omitted).

action cases such as the one at bar."[31]   Similarly, Mr. Fiebelman has attested that counsel's hourly

rates are reasonable and consistent with prior fees awarded in "complex class actions in the Western

District of Tennessee."[32]  Dr. Baum's report has concluded that counsel's hourly rates are reasonable

based strictly on their status as either senior partners or as an associate, without reference to the type

of legal work involved or the nature of the case.

 While each attorney has based his fee request on an hourly rate commensurate with a

"complex, class action case," the Court finds that it would not be reasonable to compensate counsel

at such a rate.  It is undisputed that the named Plaintiffs brought suit on behalf of more than one class

of similarly situated individuals, including a purported class of "all persons in the United States of

America who object to having a candidate that is clearly not qualified to hold the office of President

. . . ."[33]  Had these claims survived the pleadings stage and proceeded in the normal course under

Rule 23, counsel's skill and experience in class litigation would have undoubtedly been required to

defend the action.  And yet the issue of whether the case was suitable for class treatment was never

joined largely because Defendants successfully raised the issue of standing at the outset.  Moreover,

the gravamen of the pleadings was always Plaintiffs' allegation about President Obama's

constitutional qualifications for office.  The Court is not persuaded then that the legal services

counsel provided in this case were similar in kind to those required to defend a complex class action.

Instead, this action is simply one of a number of cases raising similar challenges to President

---

[31] Gastel Decl. ¶ 5 (D.E. # 37-1); G. Stranch ¶ 4 (D.E. # 37-2); J. Stranch ¶ 4 (D.E. # 37-3).

[32] Fiebelman Decl. ¶¶ 9,10 (D.E. # 37-5).

[33] Am. Compl. ¶ 42 (D.E. # 1-2).

Obama's fitness for office.  As Defendants rightly pointed out in their motions to dismiss, dozens of courts have already dismissed similar suits about President Obama's qualifications for lack of standing, suggesting that the legal issues presented in this case were not novel or unique.  And it was precisely for this reason that the Court concluded sanctions were warranted.  Counsel for Plaintiffs should have known that his clients, just as so many other plaintiffs making similar allegations, lacked standing to bring this suit.  In short, the Court finds that it would not be reasonable to award attorneys fees based on an hourly rate that is consistent with the market for legal services in complex, class actions when the dispositive issue in this case was an already thoroughly litigated question of standing.

In lieu of the rates counsel seeks in the Petition, the Court concludes that based on its experience and knowledge of the market for similar services in this District, a reasonable rate for the type of work counsel performed on behalf of Defendants would be $225 per hour for legal services by an associate attorney such as Mr. Gastel and $500 per hour for legal services by senior partners such as Mr. James Stranch and Mr. Gerard Stranch.  Therefore, the Court will calculate the lodestar amount using these hourly rates to arrive at a reasonable fee.

**D. Lodestar Calculation**

The Court concludes that Defendants are entitled to the following reasonable attorneys fees for counsel's services performed in connection with the motion to dismiss.

Mr. James Stranch        $1,000.00 (2.0 hours, $500 per hour)

Mr. Gerard Stranch       $4,150.00 (8.3 hours, $500 per hour)

Mr. Benjamin Gastel   $5,107.50 (22.7 hours, $225 per hour)

Neither party has shown why the lodestar calculation does not represent a reasonable attorneys fee

for Defendants in this case or what reasons might exist for the Court to adjust the lodestar amount. As such, the Court finds that the lodestar figure yields a reasonable attorneys fee under the circumstances.

Therefore, the Court awards Defendants a total of $10,257.50 in reasonable attorneys fees related to the motion to dismiss.  With respect to the reasonable attorneys fees for Defendants' motion for sanctions, the Court awards Defendants 3% of the total fee, or $307.73.  Pursuant to 28 U.S.C. § 1927, counsel for Plaintiffs is ordered to pay Defendants the total amount of $10,565.23 in reasonable attorneys fees related to the Rule 12(b)(1) motion to dismiss for lack of standing as well as the motion for sanctions.

## CONCLUSION

Defendants' Petition for a Reasonable Attorneys Fee is **GRANTED** though only in part.  The Court finds that Defendants are entitled to a reasonable attorneys fee for the preparation of their Rule 12(b)(1) motion to dismiss in the amount of $10,257.50.  The Court finds that Defendants are entitled to a reasonable attorneys fee for the preparation of the motion for sanctions in the amount of $307.73.  Therefore, Defendants are granted a total of $10,565.23 as a sanction against counsel for Plaintiffs.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 4, 2012.

17